MRS. JEAN NIXON, RESPONDENT, v. CHARLES R. HILL, APPELLANT.—
52 S. W. (2d) 208.

Springfield Court of Appeals. June 15, 1932.

*Barbour & McDavid* and *F. W. Barrett* for appellant.

*Mann, Mann & Miller* for respondent.

SMITH, J.—This is an action for damages growing out of an automobile collision on what is known as Highway No. 65, in Stone county, Missouri. The cause was filed in Greene county but upon change of venue was tried in the circuit court of Christian county.

The petition alleges two assignments of negligence on the part of the defendant, namely, that the defendant was operating his car at an excessive rate of speed and that he was operating it upon the wrong side of the highway. The case was tried under both allegations of negligence, and so submitted to the jury which resulted in a verdict for the plaintiff in the sum of $3750.

The trial court sustained the contention of defendant that the verdict of the jury was excessive and overruled the motion for new trial on condition that the plaintiff would enter a *remittitur* of $750 which was accordingly done and judgment was entered in the sum of $3000, and the defendant appealed.

There is no complaint made here as to the pleadings. The defend-

ant in his answer filed a counterclaim for damages claiming that the collision was occasioned by the negligence of the plaintiff. The additional Abstract of the Record filed by the plaintiff, shows that the counterclaim had been dismissed by the defendant.

The case is here on several assignments of error, which we shall consider in the order submitted, and we shall consider the facts, that we deem necessary, under the various assignments.

The defendant states his first assignment of error as follows:

"The court erred in giving Instructions No. 1 and 2 on behalf of the plaintiff and in refusing to give Instruction No. 1-F offered by the defendant. This because Instructions Nos. 1 and 2 submit the assignment of negligence to the effect that the defendant was driving his car at an excessive rate of speed when there was no evidence tending to prove such assignment, and since there was no such evidence it follows that defendant's Instruction 1-F withdrawing that assignment from the case should have been given."

Instruction No. 1-F is as follows: "The court instructs the jury that there is no evidence in the case that the defendant was driving his car at an excessive rate of speed and that assignment of negligence is withdrawn from your consideration."

The contention of the defendant is, and the testimony seems to show that no one in the car in which plaintiff was riding saw the defendant's car approaching until it was about four to six feet from the car in which plaintiff was riding, and defendant contends that it was physically impossible for any one to tell the speed of a car in such short distance and under such circumstances as here shown.

The testimony is uncontradicted that the plaintiff was riding in the rear seat of her husband's new chevrolet car, riding beside her husband, and that the car was being driven by a man by the name of Waldo Mays, and that Miss Helen Corbett was riding on the front seat by the side of Mays. The plaintiff was riding in a northerly direction, and the defendant, with his wife riding beside him, was driving a Nash car south upon said highway. For several miles at and near where the collision occurred the highway was a gravel road and was being repaired, and was dry and very dusty. The testimony shows that road workers had before this collision dragged dirt and gravel and some rock of the size of eight inches and under to the right hand side of the road going north. This row of rock and gravel was near the east side of the road bed and was from a foot to a foot and one-half high and from one and one-half to six feet wide at different places along the highway, and that the road bed was twenty-four or twenty-five feet wide from shoulder to shoulder, and since this row was on the east side of the road, that left a space from eighteen feet to twenty feet wide on the west side of this row which was being used for travel by vehicles going north and south.

The road was straight for some distance south of and for three hundred feet north of the place of the collision. The straightness of this road at this place is not denied, and that is material in view of what we shall say later.

The evidence on the part of the plaintiff shows that the plaintiff was riding just west of and about a foot from the edge of this row of gravel; that about three hundred feet north of the place of the collision there was a curve in the road, and as the plaintiff was riding north a large truck was seen coming around this curve and the dust on the highway was two or three inches deep, and this truck was seen approaching all the way from the curve, by the occupants of the car in which plaintiff was riding, and at no time was the defendant's car in front of the truck after it turned the curve. The truck was traveling at a rapid rate of speed, approximately forty-five miles per hour, and was stirring up a very thick cloud of dust, so much so that it was impossible to see through. The plaintiff's witnesses testified positively that the truck could be seen by them from the curve and that the defendant was not in front of the truck at any point after the truck reached the curve and made the turn coming towards them, and that the dust was so thick that none of them saw defendant's car until a very short time after the truck had met the car in which plaintiff was riding.

Waldo Mays said he saw the truck pass and that the cloud of dust raised by it was very bad and that just after the truck passed while he was slowing down his car on account of the dust he saw defendant's car coming head on towards him at thirty or thirty-five miles per hour, and that on account of the thickness of the dust he could not see it until it was about four feet from the car he was driving.

The testimony was preponderant that the car in which plaintiff was riding was about a foot from the gravel row, and that the defendant's car when it struck the other car was a foot or two further west, that is, that it lacked just a foot or so of striking the chevrolet car squarely head on. Other occupants in the chevrolet car saw the approaching car just before the collision. The testimony was that the two cars were jammed together and that the radiator of the chevrolet was driven back into the motor and that the front part was badly damaged and that the windshield and steering wheel were broken.

We think it was not error to refuse defendant's requested Instruction 1-F because Waldo May's testimony was competent to go to the jury for what ever it was worth on the question of the speed of the approaching car. [Tutie v. Kennedy, 272 S. W. 117, 121.] We think also that the testimony that the occupants could see the approaching truck for three hundred feet as it approached after it turned the curve in the road, and that the truck was traveling in that

three hundred feet at forty or forty-five miles per hour, and that the Nash sedan struck the chevrolet just within a second or so after the truck passed is a circumstance that the Sedan was being driven at least practically as fast as the truck, and was being driven at least behind the truck, and under the circumstances of the very bad condition of the dust, testified to by both parties, it was sufficient to justify the refusal of defendant's instruction and to justify the giving of plaintiff's instruction as to the rate of speed. What is an excessive rate of speed depends to a large extent upon the condition of the highway and the surrounding circumstances. [Ginter v. O'Donoghue (Mo. App.), 179 S. W. 732, 734; Haake v. Davis, 166 Mo. App. 249, 148 S. W. 450.]

It must be remembered, too, that there were two acts of negligence pleaded, and the plaintiff's instruction submitted the two acts of negligence conjunctively, that is, the jury was instructed that if it found the defendant was negligently driving at an excessive rate of speed *and* if it found that said collision occurred east of the center of said highway and on defendant's left hand side thereof, then the verdict should be for the plaintiff. The testimony is amply sufficient to submit to the jury the question of the collision occurring on defendant's left hand side of the highway. So, where two acts of negligence were submitted in the conjunctive, and there was evidence to support one, even if the evidence was insufficient to warrant the submission of the other, it cannot be held prejudicial to the right of the defendant to so submit the issues, because the plaintiff was assuming an unnecessary burden in presenting them conjunctively. [Webster v. International Shoe Co. (Mo. App.), 18 S. W. (2d) 131, 133, and cases cited.]

The second assignment of error relied upon here submitted by the defendant is as follows:

"The court erred in permitting the attorney for the plaintiff to improperly inject into the case throughout the trial the question of the defendant's being insured, as follows:

"1. In the examination of the panel as to their qualifications the plaintiff, over the objections of defendant, was permitted to ask the jurors whether or not any of them were members of the Union Automobile Indemnity Association, or were interested therein, or whether any juror held a policy in that company, when prior to that time the plaintiff had been furnished an affidavit made by an officer of that company showing the relation, if any, of each juror to that insurance company, and, therefore, the questions so asked were not in good faith. Also, because the attorney for the plaintiff was permitted to repeat the inquiry in different forms, likewise showing that such inquiry was not in good faith, but was repeated in different forms in order to emphasize the insurance feature before the jury.

"2. Upon the examination of the witness, Guy Nixon, the court permitted him to testify over the objections of the defendant, that the defendant Hill said he was completely covered with insurance when there was no controversy as to whether or not Hill had admitted liability, and in permitting witnesses to testify that one Brown, was an attorney for the company representing Hill when there was no issue justifying such a reference.

"3. The court erred in refusing to reprimand the attorney for the plaintiff for arguing to the jury that the defendant had not denied that he said he had coverage, for arguing to the jury that they had not denied in this case that this defendant had coverage, because whether 'he had coverage or not was not an issue in the case and was mentioned thus to impress upon the jury that the defendant was insured. Such remarks were highly prejudicial to the interests of the defendant, and injected into the case a false issue."

Our courts have repeatedly passed on the question raised in paragraph No. 1 of this assignment, and especially where an affidavit was offered similar to the one mentioned above. In keeping with the decisions of our courts on such *voir dire* examinations, we hold that no reversible error was committed in the examination here. [Smith v. Lammert (Mo. Sup.), 40 S. W. (2d) 791; Schuler, Public Adm. v. St. Louis Can Co. (Mo. Sup.), 18 S. W. (2d) 42, 46; Smith v. Star Cab Co. (Mo. Sup.), 19 S. W. (2d) 467.]

It is our opinion that when the insurance company submitted to the court the affidavit mentioned in the above assignment, and it must be taken for granted that the insurance company did that and not the named defendant, that this of itself was sufficient to show that the insurance company was an interested party in the results of this suit, and that it was proper to make inquiry of the jurors if they were connected or interested in any way in the company.

In the second paragraph of this assignment the defendant claims error was committed in permitting Guy Nixon to testify that the defendant said he was completely covered by insurance. The record on this point shows that when Nixon was on the stand the following occurred:

"I had a conversation with Mr. Hill before we left the scene of the accident. He waited there with me until the tow car came in.

"Q. Did he have anything to say with reference to whose fault it was that these two cars came together? A. Yes; I asked him about my car, the damages of it; and, he said was all his fault and he was completely covered with insurance; and it would be paid for if he had to pay for it himself; that it was absolutely his fault and he would pay for it.

"By Senator McDavid: We object to that and ask that the question and answer be stricken out. It is a conclusion of the witness and

doesn't tend to show Mr. Hill was in fault. Mr. Hill was not in position to pass on the question as to whether or not he was at fault. It is a conclusion of law and fact; and he is not capable of passing on it.

"By THE COURT: Objection overruled.

"The defendant by his counsel excepts to the ruling of the court."

We think the court did not err in admitting this testimony. It may be seen by the objection set out that the objection was not made to the testimony relative to the coverage by insurance, but to that part of the testimony of the defendant with reference to his fault in the collision. It was competent as a statement against his own interest. And no motion was made by defendant to strike out that part of the witness' answer with reference to the coverage by insurance. The question asked the witness was proper, and no objection was made to that part of his answer and no motion made to strike it out.

The record shows that the defense cross-examined the plaintiff's husband about a statement made by the plaintiff in the presence of one Joe Brown, and then the plaintiff's attorney asked the witness if he had seen Joe Brown in court that day and he said he had and that Brown told him whom he was representing. When the attorney for the defense was cross-examining the plaintiff she said when she signed the statement which was shown her, that "My husband and Mr. Mays and Mr. Brown, insurance adjuster, were present."

In the further procedure the record shows the following with reference to Brown:

"By MR. MANN: I want to offer in evidence the original answer in this case filed by Mr. Hill with the circuit court of Greene county, showing the file marks of May 10, 1930; a motion to make the petition more definite and certain, filed by the defendant, with the circuit clerk of Greene county, September 10, 1930; for the purpose of showing that Joseph N. Brown appeared as an attorney for the defendant at that time; and attorney of record in this case for the defendant.

"By SENATOR McDAVID: We don't think it is of any significance or any import."

"By THE COURT: Very well, let it go in."

"The defendant, by his counsel, excepts to the ruling of the court."

"MR. BUY NIXON, having been recalled for further cross-examination, testified as follows:

"CROSS-EXAMINATION.

"By MR. BARRETT: (Here witness was handed defendant's exhibit 3).

"That is my signature at the close of defendant's exhibit 3 and also the signature of my wife. My wife and I were present when Hill was there. I read the statement before I signed, and it was read

over to my wife before she signed it. I don't remember who read it over to my wife; I suppose Mr. Brown."

Later when Waldo Mays had been recalled for further cross-examination by the defendant, the record shows the following:

"By Mr. Mann: (Here witness was handed defendant's exhibits Nos. 3 and 4.)

"Neither one of these is in my handwriting. They are not in Mr. Nixon's handwriting. Mr. Brown wrote that down."

"Q. Who is Mr. Brown? A. He has got something to do with the company defending Mr. Hill.

"Q. How come you to go up to his office? A. He said, 'Go up and sign the statements, and it will all be fixed up.'

"Q. Is that all he told you, to go to his office? A. Go up and sign the statements and it would be fixed up.

"By Mr. Barrett: We object to that. It has no bearing on the case why he did it, unless someone induced him to sign it.

"By Mr. Mann: He is testifying to a statement made by an attorney for the defendant in this case.

"By the Court: Do you want to ask any more questions?

"(Addressing Counsel for the plaintiff.)

"By Mr. Mann: No.

"By the Court: They just objected to the last question; and I will overrule it.

"The defendant, by his counsel, excepts to the ruling of the court.

"By the Court: He is attorney for the company? (Addressing Counsel for the plaintiff.)

"By Mr. Mann: Yes, sir, for the company representing Mr. Hill.

"By Mr. Barrett: We object to that. It hasn't anything to do with this case and is only injected into the case for the purpose of prejudice; and, we ask that the jury be instructed to disregard that testimony and it be stricken out.

"By the Court: It will be refused.

"The defendant, by his counsel, excepts to the ruling of the court."

We think there was no reversible error in admitting the testimony with reference to whom Brown was representing, since it was brought out in connection with a statement produced by the defense, which had been made and given to Brown. The court files introduced in evidence showed that Brown's name appeared as an attorney in the case, and he was present at the trial, and it was not error to show his interest in the case, and at whose instance he acted.

When the attorney for plaintiff was arguing the case to the jury the record shows the following:

"By Mr. Miller: Gentlemen of the jury, in this case where the witness testifies that this defendant admitted he had coverage to take care of any damages in this car wreck, you will remember that

the defendant in this case did not deny making that statement. They have not denied in this case that this defendant has coverage.

"By Mr. Barrett: I want the statement taken down that Mr. Miller said there above the coverage is not denied; and, I want the court to reprimand him for making that kind of an argument.

"By the Court: Objection sustained.

"The plaintiff, by her counsel, excepts to the ruling of the court.

"By Mr. Barrett: I want to insist that the attorney be reprimanded, in order that the poison that has gone to the jury may be somewhat withdrawn.

"By the Court: It will be refused.

"The defendant, by his counsel, excepts to the ruling of the court."

In view of what we have heretofore said about the interest of the insurance company, and especially since the trial court sustained the objection of the plaintiff, we think it was not reversible error to fail to reprimand the attorney for the argument made.

The third assignment of error insists that the verdict was excessive and shows that it was the result of passion and prejudice and not supported by the evidence. In this case the verdict was for $3750 and the trial court overruled the motion for new trial upon condition that the *remittitur* of $750 be entered. The testimony in this case shows a serious injury to the plaintiff's lower limb, which was painful and made it difficult for her to walk. The limb was bandaged and under treatment for several weeks. The evidence shows that the plaintiff was thrown forward against the front seat and there was a serious injury to the sacroiliac joint in her back, which required the back to be braced and supported by an adhesive cast for more than a year. There was a shock to the nervous system with sleeplessness at nights, and a loss of twenty-one pounds of flesh. We think the judgment should not be interfered with on account of excessiveness of verdict. [Irwin v. St. L. S. F. Ry. Co. (Mo. Sup.), 30 S. W. (2d) 56; Peterson v. Kansas City (Mo. Sup.), 23 S. W. (2d) 1045; Ogilvie v. K. C. R. S. Co. (Mo. App.), 27 S. W. (2d) 733.]

In the fourth assignment of error complaint is made as to permitting Waldo Mays to testify as to the speed of defendant's car at the time of the collision. What we have heretofore said with reference to refused instruction No. 1-F sufficiently covers this point.

There are other assignments of error, namely, the refusal to permit the defendant to show the effect of the collision on the occupants of his car, and in admitting testimony as to the ability to work prior to and after the collision, and as to the amount of doctor bills her husband had to pay.

We have carefully examined the record as to each of these contentions, and without setting the evidence out in detail, we feel that

no prejudicial error was committed in the introduction of this testimony.

Finding no reversible error, the judgment should be affirmed and it is so ordered. *Cox, P. J.,* and *Bailey, J.,* concur.