## WHEATON v CONKLE

Ohio Appeals, 5th Dist, Holmes Co

Decided May 14, 1937

Wilkin, Fisher & Limbach, New Philadelphia, for appellant.

Carey, Estill & Kuhn, Millersburg, for appellee.

## OPINION

By LEMERT, J.

This is an action brought by plaintiff administrator for the wrongful and accidental death of his son, Anson Wheaton. Anson Wheaton was a boy fifteen years of age, who lived with his father and mother on a farm about a mile west of the village of Millersburg, and who was at the time of the accident a student in the Millersburg High School. He entered a school bus at his home, driven by one Clarence Bell and which was regularly operated for the transportation of school children, including the decedent, by the Millersburg Board of Education.

The school bus was a large bus, painted light orange in color, approximately eight feet in width, and on both front and rear were large letters designating it as a school bus.

The accident happened about 8:30 A. M., on September 11, 1935. At that time the Holmes County Agricultural Fair was in progress, and was located on the north side of the macadam highway, to which there were two entrances. About midway between the two entrances there is a bridge. The macadam road at the point of the accident is seventeen feet wide; and the distance between the fences on either side of the road is about twenty-seven feet.

The school bus was travelling on this highway with a load of grade and high school pupils, and after taking on the decedent, Anson Wheaton, proceeded in an easterly direction towards Millersburg, and as the driver came to the west entrance of the Fair Grounds, he slowed down his bus gradually and came to a complete stop, placed his car in neutral gear, set the emergency brake, and opened the door on the right side of the school bus to discharge Anson Wheaton.

The decedent stepped down from the bus and hurriedly passed along the right side of the bus, thence back of it, and was almost across the north side of the highway in line with the west entrance to the Fair Grounds when he was hit by a Dodge automobile being operated by the defendant, Darrell Conkle, in a westerly direction. The radiator on the Dodge car was crushed in, the emblem on the radiator broken off, and the glass of the right front headlight of the Conkle car was broken.

The evidence clearly shows that the defendant, Conkle, was driving his automobile from forty-five to fifty miles per hour as he approached the school bus and he did not slow down until he applied his brakes opposite the school bus, and that the skidding of his wheels, evidenced by burned rubber marks on the highway, extended from that point a distance of forty-three feet, the skidding making a loud noise as the tires skidded on the highway, and that Anson Wheaton's body lay approximately six feet beyond the front of the Conkle car when it came to a stop. The distance from where the skid marks started to where Anson Wheaton's body lay after the accident was sixty-one feet.

The record discloses, by Conkle's own testimony, that he looked down in his car and toward the Fair Grounds as he passed the main entrance and waved at the gateman stationed there and started to turn in, and that between the main entrance and the bridge he saw the school bus going slowly a short distance west; that he recognized Paul Uhl, working on the Fair Grounds, blew his horn and tried to attract his attention. He testified that as he started to pass the school bus he waved his hand at Clarence Bell, the driver, an instant before driving his car into Anson Wheaton.

The record discloses that the school bus was in plain view from the first time he saw it, his vision being perfectly clear; that he never saw the school bus stop; never saw the door open, and never saw any one get out of the school bus.

Eye witnesses to the accident testified that they saw Anson Wheaton pass around the rear end of the bus, and that as he came around the school bus onto the high-

way he looked to the right towards Millersburg and then to the left toward his home, and was turning his head to the right again at the instant that he was hit by the Conkle car.

There are several claimed grounds of error presented by counsel for the appellant, and we shall refer to them in the order in which they were presented in oral argument.

The claim is made that counsel for plaintiff below injected the question of insurance into the case. We note ▮▮▮▮▮▮ that the testimony of one Clarence Bell—said testimony having reference to Conkle's statement at the doctor's office immediately after the accident, which included a reference to his carrying insurance, together with other matters. was not anticipated by counsel for the plaintiff. The record discloses there were other witnesses present with Conkle at the doctor's office. A careful examination of the record discloses that counsel for plaintiff below had not discussed with Bell any matters dealing with insurance prior to his testifying, and any claimed intention of counsel to so inject insurance into the case is not borne out by the record. There was no objection made at the time by defendant's counsel to this matter or to the answer as made.

We note that the matter of insurance came into the record in the cross-examination of Agnes Single. It appears that at the trial of this cause, that a representative of the insurance company and Mr. Conkle went together and obtained a number of statements from the children in the school busses. The evidence shows that the insurance company's representative, Mr. Huggard, asked the questions and wrote out the statements, and then had the children sign them. The statements were not witnessed and did not show who was present when taken. Mr. Huggard was not present at the trial, so that he might be inquired of as to the manner in which the statements were made. The children denied the statements to contain their true statements at the time, and Conkle never testified as to the manner in which they were obtained.

With these facts in mind we may now consider the objection of counsel for defendant.

On page 54 of the record, counsel for defendant inquired of Agnes Single as to her statement and always referred to only Mr. Conkle being present when the statement was made. No mention was made of Mr. Huggard's presence. Then we note that reference was made to two persons there at the time, and counsel for plaintiff properly inquired as to who was with Mr. Conkle at the time the statements were made, and she replied, "an insurance man." Counsel for the plaintiff had closed his direct and re-direct examination before this matter developed. It is claimed on behalf of the defendant below that cross-examination as to the identity of this man, who wrote the statements and which they had offered for the purpose of contradicting plaintiff's witnesses, had no probative value and was not relevant for that purpose. If that be true, then any insurance agent could write out testimony, have witnesses sign the same, and failing to appear in court, would have absolute security from identification or from revealing any interest that the one writing the statements might have; a condition that no other person doing the same thing would have. The court is keeping in mind that the defendant had placed in evidence those signed statements of these witnesses, written by the insurance agent, and the truth of the statements in part were denied by the witnesses. In each instance, the record discloses, that the court when requested, ruled out all answers in which insurance was involved and cautioned the jury to disregard the same. In the general charge to the jury the court also covered this matter fully. If this case was to be retried and the defendant should make use of the statements written by the insurance agent, we fail to see how the record could be less free from these claimed objections than the present record. We find no error in this regard.

The next proposition presented is that the court committed error in refusing to grant a directed verdict, at ▮▮▮▮▮▮ the close of plaintiff's case, on the ground of contributory negligence. This claim is made under the provisions of §6310-36, GC, wh'ch requires one to look in both directions before crossing a highway.

The Supreme Court of Ohio in the 118th Oh St 252, says:

"As a matter of fact, the law does not say how often the pedestrian. must look, or precisely how far, or when, or from where."

"In either case, Cox had the right to assume that the automobile was being operated at the lawful rate of speed, * * *. His failure to anticipate negligence on the part of the driver does not constitute

negligence per se * * *. It was peculiarly difficult for Cox, facing the machine, accurately to estimate its speed. Moreover Cox was not required to make accurate mathematical calculations of the speed of the machine."

"Bearing all these circumstances in mind, it was manifestly a question of fact as to whether the plaintiff walked blindly into danger, and that question of fact should have been submitted to the jury."

"The pedestrian had the right to presume that the motorist would conform to the statute."

"In considering whether the pedestrian A. D. Cox, plaintiff below, was guilty of contributory negligence as a matter of law, all facts in the record, or inference to be drawn therefrom, must be resolved in his favor."

There is no direct evidence that Anson Wheaton did or did not look toward the east when he left the school bus or when he started around the back of the bus, and there is no presumption of law that he did not look at either of those times. Anse : Wheaton did look to the right towards Millersburg as he emerged from the back of the bus, then looked toward his home, and was just turning his head toward Millersburg again when hit by the Conkle car.

In the instant case the question of contributory negligence was properly submitted to the jury in the general charge, and for the court to have directed a verdict would have been error. It would have taken the whole question as to the care required of one of Anson Wheaton's age and experience from the jury, and would have required of Anson Wheaton the doing of a vain thing, to-wit, look to the east and west, when his vision was blocked by the bus, and would further have made §6310-36, GC, negligence per se in his case, contrary to law, and it would have been in direct contradiction of the evidence of Donald Glenn at page 115 of the record, "that Anson Wheaton did look in both directions at his first opportunity, to-wit, as he emerged from the rear of the bus." On this point we direct attention to the case of **Hughes, Administrator v Schultz, 17 Oh Ap 262,** where a motion for a verdict in the case of an adult was granted by the trial court and the Court of Appeals reversed the case.

"It is urged that the presumption (negligence) is raised by the allegations and evidence that decedent alighted from the

rear of a street car and passed around the rear of it, that she started to cross the street and had gone but a few feet when struck. How this could raise a presumption of negligence, we are unable to see. Even if an inference could be properly drawn that she did not use due care in looking, it is the function of the jury to draw this inference and to find the ultimate fact."

**Martin v Heintz, 126 Oh St at 230,** we believe is decisive of this proposition.

"It is elementary that negligence is never presumed. The presumption of law is that neither party was guilty of negligence. Absence of affirmative evidence that plaintiff looked both ways before stepping into the street is not equivalent of evidence that he did not look. An inference that he did not look does not arise from an absence of evidence.

"The evidence tends to indicate that plaintiff's looking was done when it would have been the most effective, * * *. Even if it could be inferred from plaintiff's evidence that he did not look to the right upon leaving the sidewalk, there is still the question of proximate cause, which in this case seems peculiarly a question of fact for the jury."

So that, without quoting further authorities on this point, we have to say, that considering the record before us and noting what the record discloses as to the speed of the Conkle car, his admitted negligence in failing to observe conditions upon the highway and looking around and halloing at different persons at or near the entrance to the Fair Grounds, it was a question clearly for the jury in this case to determine the question of whose negligence was the proximate cause of the injury.

Another claimed ground of error is that the giving of plaintiff's request No. 4 was not a correct statement of the law applicable to this case.

This request, after referring to statute §6310-36 GC, states that this statute does not say how often a pedestrian must look or when or from where the pedestrian must look. There is, however, in this case, evidence that Anson Wheaton looked to his right and to the left as he came from behind the bus and started across the north side of the highway. There is no evidence as to whether or not he looked in either direction as he left the bus. Then, the first part of the special request is a cor-

rect quotation from the following authority: **Trentman v Cox, 118 Oh St 252.**

"As a matter of fact, the law does not say how often the pedestrian must look, or precisely how far, or when, or from where. If he looks as he starts to cross, and the way seems clear, he is not bound as a matter of law to look again."

The second part of this request is to the effect that this statute was passed to govern the conduct of adults and that Anson Wheaton, being fifteen years of age, was bound only to such care as the ordinary 'child of his age and experience would use under the same or similar circumstances.

This proposition is supported by the case of· **R.·ling Mill Co. v Corrigan, 46 Oh St 263,** which has never been reversed and is now the law of this state, dealing with the degree of care required of children.

In the case of **Fightmaster v Mode, 31 Oh Ap 273, et seq.,** at page 281, we note the following:

"In the application of the doctrine of contributory negligence to children, in actions by them, or in their behalf, for injuries occasioned by the negligence of others, their conduct should not be judged by the same rule which governs that of adults; and while it is their duty to exercise ordinary care to avoid the injuries of which they complain, ordinary care for them, is that degree of care ·which children of the same age, of ordinary care and prudence, are accustomed to exercise under similar circumstances.

"Children constitute a class of persons of less discretion and judgment than adults, of which all reasonably informed men are aware. Hence ordinarily prudent men. reasonably expect that children will exercise only the care and prudence of children, and no greater degree of care should be required of them than is usual under the circumstances, among careful and prudent persons of the class to which they belong.

"Children are not chargeable with the same care as persons of. mature years. Although children are required to ,exercise ordinary care to avoid the injuries of which they complain, such care, as applied to them. is that degree of care which children of the same age, education, and experience, of ordinary care and prudence, are accustomed to exercise under similar circumstances.

"The standard governing such negligence on the part of a youth is not the same as that of an adult." **Ry. Co. v Grambo, 103 Oh St 471 and 476.**

· This request, when carefully read, does not say that §6310-36 GC had no application to Anson Wheaton, aged fifteen. It does say that in the jury's determination of any violation of the section by him that he is only required to exercise such care as one of his age, of ordinary care and prudence, is accustomed to exercise under similar circumstances.

We therefore note that the special request objected to is a correct statement of the law as adopted by the Supreme Court of Ohio, and that the jury was fully advised as to the requirements of §6310-36, GC, and the court properly instructed the jury that the decedent would be negligent if he failed to look in both directions in the event that the jury should find that ordinary care in one of his age so required.

Further complaint is made as to whether or not the school bus had stopped.

We note from the record that every eye witness for both plaintiff and defendant testified definitely that the school bus came to a complete stop before Anson Wheaton left the bus, except Conkle himself, who was not an eye witness. Conkle testified that he could not explain why he did not see it stop except that he was looking over toward the Fair Grounds during that time, and admits that as he approached the bus he saw the front wheels of the bus starting out in the highway and he assumed the bus had taken on a passenger at that point. There is no evidence in the record that the bus had not come to a complete stop. Under the state of the record on this point Conkle can not excuse any liability for negligence under a claim that he was looking towards the Fair Grounds and did not see the bus stop and for that reason he should not be held to the duty and care imposed by law. Under such circumstances any one could excuse negligence by failing to observe what a reasonable and prudent person would observe on the highway.

In conclusion, we submit that the circumstances surrounding this accident called upon any motorist approaching the school bus —which as a matter of common knowledge is provided for the transportation of school children—to exercise a high degree of care and watchfulness, and if the motorist does see, or in the exercise of ordinary care could have seen the bus stop and a school

child leave the bus and start around the side of the bus to the rear thereof, that motorist has no right to act upon an assumption that some one had entered the bus at that point. The law does not permit one to ignore proper watchfulness and in lieu thereof to assume what may have transpired and act thereon.

In this case the accident resulted in the death of Anson Wheaton and was a direct result of the act of a motorist, who, by his own testimony, failed to keep a proper lookout after he saw the school bus slowing down, and instead of watching the highway and exercising the proper degree of care then required he devoted his attention to the Fair Grounds, and even after he saw the bus starting out onto the highway after it had stopped he continued at high speed, acting upon an assumption instead of applying the greater degree of care required by the circumstances, and thereby, and for no other reason, as evidenced by the record and the testimony of Conkle, himself, Anson Wheaton lost his life.

The verdict of the jury is not excessive, and we are of the opinion that the verdict is just and proper, and that there is no error prejudicial to the rights of the defendant in the record. The judgment is therefore affirmed. Exceptions may be noted.

MONTGOMERY, PJ, and SHERICK, J, concur.