GEGAN v. KEMP.

1. WITNESSES—IMPEACHMENT—WRITTEN STATEMENT—ADJUSTER.
    At the trial of an action arising out of a collision between automobiles where defendant had introduced a written statement to impeach a witness for plaintiff, prepared by an adjuster and witnessed by him, plaintiff had a right to show the circumstances under which the statement was made, who prepared it, and what interest he had in it.

2. APPEAL AND ERROR—EXCLUSION OF EVIDENCE—INSURANCE COVERAGE—FLAGRANT VIOLATION OF RULE.
    The rule of exclusion of evidence that one being sued for injuries carries insurance ought not to be employed to set aside judgments except in cases of flagrant violation.

3. TRIAL—PERSONAL INJURIES—INSURANCE COVERAGE—REPETITIOUS
QUESTIONS—WARNING BY COURT.

> In personal injury action arising out of automobile collision,
> while it was not a breach of good faith when it was shown
> for the first time that statement had been prepared and wit-
> nessed by an insurance adjuster representing defendant, it
> was improper, after witness who had signed statement had
> stated he did not know who the person was who had pre-
> pared the statement, to ask the witness if such person
> had told him he was a claim agent for an insurance company
> and it was prejudicial error to bring out the same facts by
> repetitious questions, especially after having been warned by
> the trial judge, where record indicates considerable question
> as to the defendant's liability, there being a flagrant vio-
> lation of the rule excluding evidence that party sued for
> injuries carried insurance.

Appeal from Iron; Bell (Frank A.), J. Sub-
mitted April 9, 1942. (Docket No. 41, Calendar
No. 41,922.) Decided June 10, 1942.

Case by Elenore Gegan against Wallace R. Kemp
for damages for personal injuries sustained in a
motor vehicle collision. Verdict and judgment for
plaintiff. Defendant appeals. Reversed and re-
manded for new trial.

*C. D. Dwyer,* for plaintiff.

*Ray E. MacAllister,* for defendant.

BUTZEL, J. About 8 p.m. April 1, 1941, Elenore
Gegan was a passenger in a car driven by her 15-
year-old sister and belonging to their father. The
sister did not have a driver's license and testified:

"I drive an automobile once in a while, but have
not since the last accident."

Defendant was an experienced driver and was
coming from the opposite direction on the same
road. He claimed that he saw the car in which

plaintiff was riding proceeding towards him on the wrong side of the road, and that in order to avoid a collision he turned his car to the left, and that the driver of plaintiff's car just at that moment drove back to her right side of the road. A collision ensued and plaintiff was badly injured. There was a direct conflict of testimony. The jury held defendant responsible and awarded plaintiff a verdict of $3,000, upon which judgment was entered.

The trial judge in refusing a new trial stated that the verdict was high, more than he would have allowed had he tried the case without a jury, but did not reach such magnitude as to shock the conscience of the court; that he was very much in doubt as to whether the injection of the insurance question into the case was not error; that it was his opinion at the time the case was tried that the conduct of the attorney in injecting the insurance question into the case was error and that it went beyond the limitations fixed by the Supreme Court on the question of inquiries relative to insurance: namely, that where such question is drawn into the case deliberately for the purpose of putting it before the jury, it is error; but where it is done merely with an honest effort to ascertain the qualifications of jurors or the credibility of witnesses, that it is considered to be incidental and not error. He further stated that it was an open question as applied to the facts in this case and he wanted to get the expression of the Supreme Court for that reason. This really is the sole question in the case. It arose in the following manner.

George Groulx was a fellow passenger in the car in which plaintiff was riding. He testified that the driver, Alice Richter, kept on the right side of the road at all times, whereupon he was confronted with a written statement signed by him in which he had stated:

"The girls picked me up on April 1, 1941, to go with them to Crystal Falls. Alice Richter was driving her father's car. She never drove much before, but she drove pretty good for the little driving she had done. The way it looked she had been driving on the wrong side of road or about in the middle for a little ways. * * * Signed George Groulx. Witness: W. J. Faught and Ed Gallup."

This statement is referred to as exhibit A. We quote the testimony of the witness:

"*Q.* Mr. Groulx, I show you defendant's exhibit A and ask if that is your signature at the bottom?
"*A.* Um huh.
"*Q.* That is your signature?
"*A.* Um huh.
"*Mr. Dwyer:* Say yes or no.
"*A.* No, I don't remember that.
"*Q.* Is that your signature?
"*A.* Yes, I guess it is.
"*Q.* You know it is.
"*Mr. Dwyer:* Will you introduce this?
"*Mr. MacAllister:* I am going to. I desire to offer defendant's exhibit A in evidence.
"*The Court:* I hear no objection.
"*Mr. Dwyer:* I am letting it go in temporarily until I cross-examine.
"*The Court:* It may be received."

On re-direct examination he was asked as follows:

"*Q.* Who is Mr. W. J. Faught? That witness.
"*A.* I don't know. I don't know who that is.
"*Q.* Who took that statement? Whose writing is that?
"*A.* Claim agent.
"*Q.* For who?
"*A.* I don't know.
"*Q.* Who did he tell you he was for?
"*A.* He said he was a claim agent.

"*Q.* For whom?

"*A.* Well.

"*Q.* Did he tell you?

"*A.* No.

"*Q.* Did he tell you he was a claim agent for the insurance company?

"*Mr. MacAllister:* If your honor please, I object to that as being leading and suggestive and calling for a conclusion.

"*The Court:* Objection sustained.

"*Mr. Dwyer:* If your honor please, I have the right to show by this witness who this man is. I will go into it with Mr. Kemp—

"*The Court:* I have sustained the objection. I will hear no argument about it. I have ruled three times. You haven't any right to ask any such leading questions as you have asked.

"*Q.* Who was Mr. Faught?

"*A.* He said he was a claim agent for the insurance company.

"*Mr. MacAllister:* If the court please, I object to that and ask that it be stricken.

"*The Court:* It may be stricken. You have no business to ask that question, Mr. Dwyer.

"*Mr. Dwyer:* I have the right to inquire as to who this man is who signed this statement as a witness. They introduced the statement.

"*The Court:* I am not going to argue about it.

"*Mr. Dwyer:* Am I to be foreclosed from showing who this man is who took this statement? They introduced it.

"*The Court:* You already have it in and I have told you that you had no right to ask this witness whether this man represented an insurance company. It is a leading question. You have it before the jury and I have ruled on it. You have no right—

"*Mr. MacAllister:* If your honor please—

"*Mr. Dwyer:* I'll prove it. I'll make you take the stand and swear to it. I could have taken the stand and testified to it myself and would have.

"*The Court:* We won't argue about that either.

"*Mr. Dwyer:* They introduced the statement and this man signed as a witness. I think I have some rights about it.

"*Q.* What kind of a looking man was he?

"*A.* He was only here a few minutes. I didn't pay much attention to him.

"*Q.* Where did he take this statement?

"*A.* At my place.

"*Q.* Where?

"*A.* In Gaastra.

"*Q.* Was this statement written with a fountain pen—how was it written?

"*A.* He wrote it with a fountain pen. He wrote that himself.

"*Q.* Tell the circumstances of your giving this statement. Tell the circumstances that lead up to your giving of this statement that has been introduced in evidence here—defendant's exhibit A.

"*A.* He said he was a claim agent for the insurance company.

"*Mr. MacAllister:* I object to that, your honor, and ask that that be stricken.

"*The Court:* It may be stricken.

"*A.* He said he wanted this statement from me and he said he was going to see the rest and get statements from Alice and Elenore, but he didn't go to their place at all. He just come to my place and didn't go over there at all.

"*Mr. MacAllister:* I ask that that be stricken. What he said he was going to do. Incompetent and immaterial.

"*Q.* What did he say he needed that statement for?

"*The Court:* This voluntary stuff about what this witness says he said he was going to do, that may be stricken out.

"*A.* I don't know what he wanted it for.

"*Q.* Did he ask you questions?

"*A.* He asked me about the automobile accident and I told him about how it happened and then he

said he was going to get statements from the other two and he never went there.

"*Mr. MacAllister:* I ask that that be stricken.

"*The Court:* It may be stricken.

"*Q.* I would like to have you read over this statement and tell me if there's things—if you said everything that is in that statement. You say you never read it over. Take your time and read it over. All right, now tell me that.

"*A.* No, I didn't read it.

"*The Court:* Counsel asks you to tell if there is anything in there that you didn't say. Tell him what it is.

"*A.* I told him that she had her right side of the road and it is a little different in there.

"*Q.* What else did you tell him that's different?

"*A.* Well, that's—

"*Q.* Is there anything else in there that's different?

"*A.* No, it's just about what I remember I told him.

"*Mr. Dwyer:* You may examine.

"*Mr. MacAllister:* With your permission, I would like to read this statement into the record, the same being defendant's exhibit A.

"*The Court:* All right."

The defendant was sworn as a witness. He was asked on cross-examination as follows:

"*Q.* Mr. Kemp, you probably can help us out on this. Who is Mr. W. J. Faught?

"*A.* Mr. Faught—or whatever his name is—you mean you want his job?

"*Q.* I want to know who he is.

"*A.* The man lives at Traverse City.

"*Q.* What does he do?

"*A.* I think he is a legal adjuster.

"*Q.* For whom?

"*Mr. MacAllister:* I object to that. The court

has ruled and he is going right back at the same thing.

"*The Court:* You know. Go ahead and take the consequences.

"*Q.* For whom?

"*A.* For the insurance company with whom I have had my collision insurance.

"*Q.* Did you authorize him to go and take that statement?

"*Mr. MacAllister:* I object to that as immaterial, incompetent, and irrelevant.

"*A.* No.

"*Mr. Dwyer:* I think that's all."

There can be no question but that after defendant introduced the statement prepared by the adjuster and witnessed by him, plaintiff had a right to show the circumstances under which the statement was made, who prepared it and what interest he had in it. *Rosenberg* v. *Mageda,* 251 Mich. 696; *Perry* v. *F. Byrd, Inc.,* 280 Mich. 580; *Herbert* v. *Durgis,* 276 Mich. 158.

There thus was no error in bringing to the attention of the jury the fact that the statement had been written and prepared by an insurance adjuster representing defendant. After the witness stated that he did not know who Faught was, it was improper for plaintiff's attorney to ask the leading question, "Did he tell you he was a claim agent for the insurance company?" It was reversible error, after this fact was brought out, for plaintiff's attorney to revert to this fact again and again. It was particularly so after he had been warned by the trial judge. It could not help but impress the members of the jury with the fact that the insurance company was the real party defendant. With the record before us, there might be considerable question as to the defendant's liability. Such

question might have been resolved in plaintiff's favor when it was brought home to the jury by the repeated questions that defendant was insured. There was no breach of good faith when it was shown for the first time that the statement had been prepared and witnessed by the insurance adjuster, but the prejudicial error arose through repetitious questions designed to bring out the same facts. For this reason the case must be reversed. The correct rule of law was stated by Mr. Justice Wiest in *Morris* v. *Montgomery*, 229 Mich. 509, as follows:

"Plaintiff testified to a conversation with defendant at a hospital and stated an insurance adjuster was present. The testimony about an insurance adjuster was struck out. This cured the error. The time has come when probably a majority of persons on every jury own automobiles and the policy of carrying insurance is so common that it is not surprising if jurors sense the fact. The rule of exclusion, perhaps, ought to continue, even though everyday affairs have moved beyond its original reason, but it ought not to be employed to set aside judgments except in cases of flagrant violation."

There was such a flagrant violation in the instant case and, for that reason, it is reversed, with costs to defendant, and the case remanded for new trial.

Chandler, C. J., and Boyles, North, Starr, Bushnell, and Sharpe, JJ., concurred. Wiest, J., took no part in this decision.