Manda **TURNER**, Plaintiff-Appellant,

v.

Mary L. **CALDWELL** and Lester H. Nickerson, Defendants-Respondents.

No. 30727.

St. Louis Court of Appeals.

Missouri.

Sept. 19, 1961.

Rehearing Denied Oct. 17, 1961.

Hullverson, Richardson & Hullverson, Thomas Hullverson, St. Louis, Ralph W. Harris, Marion, for plaintiff-appellant.

Derrick & Holderle, Tyree C. Derrick, Gragg, Aubuchon & Walsh, Eugene P. Walsh, St. Louis, for respondents.

DOERNER, Commissioner.

On Saturday, May 9, 1959, about 9:30 P.M., a car driven by defendant Mary Lee Caldwell was struck from the rear by a car driven by defendant Lester H. Nickerson. The plaintiff, Manda Turner, a passenger in the car operated by Mrs. Caldwell, sought by this action to recover damages from both defendants for alleged personal injuries. The verdict was in favor of plaintiff and against both defendants for $6,000. Separate motions for a new trial were filed by the respective defendants, and sustained by the court, whereupon plaintiff appealed.

Because of the grounds upon which the motions for a new trial were sustained, and the issues presented on appeal, an exhaustive statement of the evidence is not necessary. It will be sufficient to say that at the

time of the occurrence Mrs. Caldwell was driving westwardly in the center lane of Natural Bridge Road, in the City of St. Louis, and intended to purchase some hamburgers at a White Castle hamburger stand located on the southeast corner of Natural Bridge and Kingshighway. Plaintiff was sitting in the middle of the rear seat. A driveway into the hamburger stand was located 50 to 70 feet east of Kingshighway. Mrs. Caldwell's version of the occurrence was that as she approached the driveway, intending to turn to her left, she gradually slowed down, with her left turn signal blinker working; that she stopped for about one-half minute or more opposite the driveway, waiting for eastbound traffic to clear; and that the car she was driving was then forcibly struck from the rear by the car driven by Nickerson. She heard no screeching of brakes or squealing of tires until after the collision. Nickerson's version of the accident was that he was following the Caldwell car, in the center lane, at a distance of one or one and a half car lengths, with both traveling at a speed of 30 to 35 miles an hour; that as the cars neared Kingshighway the stop light at that intersection was green for east-west traffic; that the stop lights of the Caldwell car came on, and the car was brought to a sudden stop, causing the back end to go up a little; that he immediately applied his brakes, which screeched, and turned slightly to the right, but was unable to stop in time to avoid hitting the Caldwell car. He placed the point of impact as west of the driveway into the hamburger stand, and "a few feet" east of Kingshighway. Plaintiff's own testimony was that just before the collision she was looking in her purse for money with which to purchase sandwiches; that " * * * all of a sudden we were just stopped and hit. Just seemed like it was all at the same time." She didn't know whether or not Mrs. Caldwell had her blinker light on for a left turn; wasn't paying any attention to the speed Mrs. Caldwell was driving before the accident, except that they were moving along with the rest of the cars; and didn't know

whether the car was stopped for some time before the impact occurred. Plaintiff's principal injury consisted of what one of her medical witnesses described as " * * * the type of injury termed whiplash."

As stated by the trial court, the grounds upon which it sustained the defendants' motions for a new trial were twofold. First, that the fact that Mrs. Caldwell was covered by insurance was improperly injected into the case; and second, that the fact that Nickerson was not covered by insurance was improperly introduced into the case by that defendant. It is the plaintiff's contention on appeal that the court erred in granting a new trial as to both grounds. Defendant Caldwell does not attempt to justify the court's action on any other ground stated in her motion for a new trial. No brief has been filed on behalf of defendant Nickerson. Hence the only issues presented for our consideration are those raised by the plaintiff.

The evidence that Mrs. Caldwell was insured was brought into the case while the plaintiff was on the witness stand. Following her direct examination plaintiff was cross-examined by counsel for Mrs. Caldwell. During that cross-examination plaintiff was confronted with a written statement. She admitted that she had been interviewed by "a man," that he had written out the statement, and that she had signed it. She testified that she had told the man that she was too sick to give a statement, but he had insisted that he had to have one; that he wrote something down, but that she hadn't read the statement before she signed it. Counsel pressed her about variances and inconsistencies between her direct testimony and the written statement regarding the manner in which the accident had occurred. Plaintiff denied having made a minor part of the statement, but in general her position was that she didn't remember what she had told the interviewer. Upon the completion of defendant Caldwell's cross-examination, counsel for defendant Nickerson then undertook to cross-examine

plaintiff, during the course of which the following occurred:

"Q. Do you know who this man was who took this statement? A. He said his name was Johnson, from Mary Lee Caldwell's insurance.

"Mr. Derrick: I object to that, if the court please, and move for a mistrial."

The court overruled the motion for a mistrial, and out of the presence of the jury, and at the suggestion of counsel for plaintiff, cautioned the plaintiff that she was not to mention the subject of insurance again. No such reference was subsequently made. The statement was identified as defendant Caldwell's exhibit A, and was later introduced in evidence and passed among the jury.

Plaintiff does not seek to exculpate herself on the grounds that the question which elicited her answer was propounded by counsel for defendant Nickerson. She states it is immaterial whether the inquiry was made by counsel for defendant Nickerson or her own counsel. Nor does plaintiff offer the element of "good faith," sometimes mentioned as an extenuating circumstance to justify the exercise of the trial court's discretion. While plaintiff in her brief does not entirely abandon the contention that the trial court abused its discretion in granting defendants a new trial, she states that she has "no heart" in arguing something which she denies ever existed. Briefly stated, plaintiff's position is that since her written statement had been used by defendant Caldwell during cross-examination for the purpose of impeachment, on redirect examination she was therefore entitled, as a matter of right, to identify the individual who had procured the statement and to state his interest and relationship even though the subject of insurance was thereby introduced in the case; and that having that right, as a matter of law, the court had no discretion to exercise, and his order granting a new trial is therefore reviewable on appeal.

The rule is well established that "After a witness has been cross-examined, the party calling him may by redirect examination afford the witness opportunity to make full explanation of the matters made the subject of cross-examination so as to rebut the discrediting effect of his testimony on cross-examination and correct any wrong impression which may have been created. * * *" City of St. Louis v. Worthington, 331 Mo. 182, 52 S.W.2d 1003, 1009; Glasco Electric Co. v. Union Electric Light & Power Co., 332 Mo. 1079, 61 S.W.2d 955. On redirect examination a witness may give his reasons for his actions in order to refute unfavorable inferences from matters brought out on cross-examination. State v. Vickers, 209 Mo. 12, 106 S.W. 999. He may state the circumstances connected with the matter inquired about on cross-examination, although the fact brought out may be prejudicial to the other party. Brendel v. Union Electric Light & Power Co., Mo., 252 S.W. 635. Thus it has been held that a witness may explain his reason for signing a disputed statement, even though it would necessarily appear from the witness' explanation that the defendant had effected a settlement with him. Johnson v. Minihan, 355 Mo. 1208, 200 S.W. 2d 334.

When a witness has been impeached on cross-examination by an inconsistent written statement, does his right to give his reasons for signing it, to state the circumstances under which it was signed, and "to make full explanation of the matter," include the right to inform the jury of the identity of the statement-taker, even though it will thereby be disclosed that the defendant has liability insurance? There are numerous decisions in Missouri in which testimony was adduced that the statement of the witness had been procured by a representative of the defendant's liability insurance carrier. Jones v. Missouri Freight Transit Corp., 225 Mo.App. 1076, 40 S.W.2d 465; Cervillo v. Manhattan Oil Co., 226 Mo.App. 1090, 49 S.W.2d 183; Zeller v. Wolff-Wilson Drug Co., Mo.App.,

51 S.W.2d 881; Nixon v. Hill, 227 Mo. App. 312, 52 S.W.2d 208; Kaley v. Huntley, Mo.App., 88 S.W.2d 200; Vesper v. Ashton, 233 Mo.App. 204, 118 S.W.2d 84; Cheffer v. Eagle Discount Stamp Co., 348 Mo. 1023, 156 S.W.2d 591. In some of them (Jones, Cervillo and Nixon) mention is made of the right of the witness to show who obtained his statement. But in all of them, with the possible exception of Nixon, the ultimate decision is based on the premise that such evidence, while inadmissible, was injected under such circumstances that the determination of its non-prejudicial effect was within the scope of the trial court's discretion. Thus in some it was said that there was a lack of bad faith (Jones, Zeller and Vesper); or that the witness volunteered the answer (Jones, Zeller and Vesper); or that the testimony was brought out by the defendant, rather than the plaintiff (Zeller and Kaley); or that from the voir dire examination the jury already knew that an insurance company was interested in the case (Jones); or that no objection had been made (Kaley); or that an instruction directing the jury to disregard the evidence was given at the close of the case (Vesper).

In Nixon v. Hill, supra, when defendant was cross-examining the plaintiff about her statement, she said she signed it when "My husband and Mr. Mays and Mr. Brown, insurance adjuster, were present." [227 Mo. App. 312, 52 S.W.2d 211.] So far as the opinion shows, there was no motion made to strike that answer. Plaintiff introduced the court files to show that at one stage of the case Brown had appeared as attorney for the defendant. Subsequently, on redirect examination of one Mann, a witness for plaintiff, over objection Mann was permitted to testify that Brown wrote out his statement; that Brown had " * * * something to do with the company defending Mr. Hill"; and that he signed the statement because he was told " 'Go up and sign the statements, and it will all be fixed up.' " On appeal the Springfield Court of

Appeals disposed of the matter by saying (52 S.W.2d 211, 212):

"We think there was no reversible error in admitting the testimony with reference to whom Brown was representing, since it was brought out in connection with a statement produced by the defense, which had been made and given to Brown. The court files introduced in evidence showed that Brown's name appeared as an attorney in the case, and he was present at the trial, and it was not error to show his interest in the case, and at whose instance he acted."

It is not clear from this language whether the court meant to hold that Mann's testimony was admissible because plaintiff during her cross-examination had identified Brown as an insurance adjuster, without objection, or whether, standing alone, Mann's testimony was admissible.

However, in a later case, Vesper v. Ashton, supra, the Kansas City Court of Appeals observed (118 S.W.2d 89):

"In this state it is questionable whether a party may show that a person, who has taken a statement from a witness, represents an insurance company, rather than the other party to the cause, so long as that person is not used as a witness in the case. * * *"

And there are expressions in other opinions which tend to support the view that to inject insurance into the case by identifying the statement taker, or an individual who procured a disputed release, is prejudicial error. Allen v. Wilkerson, Mo.App., 87 S.W.2d 1056; Hannah v. Butts, 330 Mo. 876, 51 S.W.2d 4.

When a witness admits that he signed the statement with which he is confronted on cross-examination, the statement thereby becomes admissible in evidence, even though the witness may deny that he read the statement or may deny that he told the taker the material matters

contained therein. Winn v. Gulf, Mobile & Ohio R. R. Co., Mo., 284 S.W.2d 455. Hence it is not necessary for the cross-examiner to produce as a witness the person who took the statement. Winn v. Gulf, Mobile & Ohio R. R. Co., supra, and the party producing the witness is afforded no opportunity to cross-examine the statement-taker as to the circumstances surrounding the procurement of the statement, nor his interest in the case. In such a situation the jury must decide whether to believe the testimony in chief of the witness, or the contradictory declarations contained in the statement, and where the witness is a party, be he plaintiff or defendant, his rights may be materially affected because the vital question of his veracity is at stake.

Where the statement has been denied or questioned by the witness, the credibility of the statement-taker, as well as that of the witness is, in a sense, likewise in issue. As was aptly said in Smith v. Pacific Truck Express, 164 Or. 318, 100 P.2d 474, 479:

"* * * Where no misrepresentations or inducements of any description are asserted, or where it appears that in no substantial particular is there any variance between the writing and what the witness told the person who obtained it, the fact that that person is an insurance adjuster is wholly irrelevant and its admission in evidence can serve no purpose but an improper and illegitimate one. But where the statement is questioned, then an issue arises between the witness sought to be impeached and the person who prepared the writing, for the latter, though he may never appear in the court room, is nevertheless, in a sense, vouching for the accuracy and authenticity of the document. He is, as it were, a mute witness, and the jury have the right to be informed of his interest in the case when weighing the testimony of the witness who attacks his handiwork."

And in determining the weight to be given to the witness' statement the jury should be entitled to know the identity of the taker, and his interest in the case. The reason is obvious, and was well-stated in Fleischman v. City of Reading, 388 Pa. 183, 130 A.2d 429, 433:

"Allowing to every insurance investigator credit for honesty, integrity, and square dealing, he is still a partisan defending the interests of his employer to the best of his ability. Whether, in his zeal to properly represent his employer, or whether through human error, he gives the plaintiff the worst of it in any report he makes to the insurance company, which report is later read in court, it is up to the jury to determine, between the investigator and the plaintiff, who is entitled to the greater credibility. However, before the jury can make this decision, the mask of anonymity must be lifted, and the investigator given a local habitation and a name."

■■ Ordinarily it is true, as defendant Caldwell contends, that it is prejudicial error for a plaintiff to introduce evidence to show, or to comment upon the fact, that a defendant carries liability insurance. Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S.W.2d 961; Whitman v. Carver, 337 Mo. 1247, 88 S.W.2d 885; Olian v. Olian, 332 Mo. 689, 59 S.W.2d 673. Nevertheless it is recognized that "* * * In some instances the disclosure of the relation of such a company (insurance company) to the parties or to the trial is not only proper but necessary to the due administration of justice." Hannah v. Butts, 330 Mo. 876, 51 S.W.2d 4, 7, and that "* * * where evidence is admissible for one purpose or one issue but would be improper for other purposes and upon other issues in the case, it should be received. The opponent then has a right to an instruction if he should request it limiting the extent to which and the pur-

pose for which the jury may consider such evidence. * * *" State ex rel. Kansas City Public Service Co. v. Shain, 345 Mo. 543, 134 S.W.2d 58, 61, 124 A.L.R. 1331; Johnson v. Minihan, supra. There are many cases which hold that evidence which discloses the relationship of an insurance company to a party, or its interest in the trial, is admissible if it affects the weight to be given testimony, the admissibility of evidence, or the credibility of a witness. Grindstaff v. J. Goldberg & Sons Structural Steel Co., 328 Mo. 72, 40 S.W.2d 702; State ex rel. Tramill v. Shain, 349 Mo. 82, 161 S.W.2d 974; Snyder v. Wagner Electric Mfg. Co. of St. Louis, 284 Mo. 285, 223 S.W. 911; Jablonowski v. Modern Cap Mfg. Co., 312 Mo. 173, 279 S.W. 89; Schuler v. St. Louis Can Co., 322 Mo. 765, 18 S.W.2d 42; Leavitt v. St. Louis Public Service Co., Mo.App., 340 S.W.2d 131. While disclosure of defendant Caldwell's insurance coverage necessarily appeared from the plaintiff's answer, we have reached the conclusion that as part of plaintiff's refutation of the statement used for the purpose of impeaching her and affecting her credibility, she was entitled, as a matter of law, to inform the jury of the identity of the person who took the statement, and his interest in the case.

In this opinion we are supported by the almost universal general rule which prevails in other states. Thus in 98 C.J.S. Witnesses § 422, p. 232, it is said:

"Where a witness in an action for injuries is cross-examined as to a written statement which he had made, it is not improper for the witness to be asked in whose behalf the one who procured the statement was acting and elicit the fact that he was acting for an insurance company, and, similarly, after cross-examination has shown that the witness made a statement to someone, it is not improper to ask to whom the statement was made and elicit the answer that it was made to an insurance man."

And in 4 A.L.R.2d § 9, p. 782, it is stated:

"As a general rule, where a previously written statement is produced in court and used for the purpose of impeaching plaintiff or one of his witnesses, it is proper for plaintiff's counsel to show that the person procuring such statement was a representative of defendant's insurance company."

In support of this rule see Arizona Cotton Oil Co. v. Thompson, 30 Ariz. 204, 245 P. 673; Mullanix v. Basich, 67 Cal.App.2d 675, 155 P.2d 130; Heinz v. Backus, 34 Ga.App. 203, 128 S.E. 915; Pinkerton v. Oak Park National Bank, 16 Ill.App.2d 91, 147 N.E.2d 390; Williams v. Matlin, 328 Ill.App. 645, 66 N.E.2d 719; Gegan v. Kemp, 302 Mich. 218, 4 N.W.2d 525; Rosenberg v. Mageda, 251 Mich. 696, 232 N.W. 397; Jankowski v. Clausen, 167 Minn. 437, 209 N.W. 317; Gleason v. Baack, 137 Neb. 272, 289 N.W. 349; Long v. Crystal Refrigeration Co., 134 Neb. 44, 277 N.W. 830; Treftz v. Kirby, 146 A. 688, 7 N.J. Misc. 555; Taylor v. Ross, Ohio App., 78 N.E.2d 395, reversed on other grounds, 150 Ohio St. 448, 83 N.E.2d 222, 10 A.L.R.2d 377; Wheaton v. Conkle, 57 Ohio App. 373, 14 N.E.2d 363; Smith v. Pacific Truck Express, 164 Or. 318, 100 P.2d 474; Webb v. Hoover-Guernsey Dairy Co., 138 Or. 24, 4 P.2d 631; Gianini v. Cerini, 100 Wash. 687, 171 P. 1007. Contra, see Cutler v. Young, 90 N.H. 203, 6 A.2d 162; Texas Co. v. Betterton, 126 Tex. 359, 88 S.W.2d 1039; Ivie v. Richardson, 9 Utah 2d 5, 336 P.2d 781.

Turning to the second grounds upon which the court sustained defendants' motion for a new trial, as part of his opening statement counsel for Mrs. Caldwell informed the jury that her evidence would show that immediately after the accident occurred Nickerson " * * * told the people there that it was his fault * * *"; and that Nickerson " * * * some three days or so after this collision occurred, went down to Mr. Tritley, who owned the automobile, and admitted that he was in

fault in striking the automobile and damaging it, and he told him where to go to get the car repaired, and subsequently he paid for the repairs to the automobile." Mrs. Caldwell was called to the stand by plaintiff. Upon cross-examination by her own counsel, she testified that in a conversation which occurred immediately after the collision, Nickerson had said that he didn't see the Caldwell car, and that " * * * if anybody would have to do any paying it would be him"; that after her husband arrived on the scene Nickerson " * * * said it was his fault"; and that four days after the collision she was at the home of Charles L. Tritley, whose wife owned the car she had been driving, and that Nickerson again said the accident "was his fault" and that " 'If anybody has to do any paying it is going to be me. I will have to pay.' "

Nickerson was also called to the stand as a witness for the plaintiff. On direct examination he stated that he could not recall saying immediately after the accident that it was his fault or that he was going to pay for something. Counsel for Mrs. Caldwell on cross-examination then developed from Nickerson that the damage to the Tritley car amounted to $308, and that Nickerson had paid for it. Nickerson denied having told Mr. Caldwell that the accident was his fault. The cross-examination continued by Mr. Derrick:

"Q. At any time did you tell him (Mr. Caldwell) it was your fault? A. No, sir.

"Q. You did not. But you just went ahead and paid for the automobile? A. I paid that $308, all in accordance with the safety Responsibility Law to save my license.

"Q. You paid $308 damages, even though it wasn't your fault, is that right? A. I was trying to save my driver's license.

"Q. I say, even though it wasn't your fault, is that right? A. That's right.

"Q. And you never did tell him it was your fault? A. That's right.

"Q. Did you go down to his home and tell him to take it to get it appraised? A. That's right, sir.

"Q. You didn't give him the money; you paid the person who repaired the automobile? A. That's right."

On redirect examination by Mr. Hullverson, counsel for plaintiff, Nickerson testified:

"Q. Mr. Nickerson, let me understand this a little better. You mentioned that you paid $308. A. Yes, sir.

"Q. And why did you pay that money, sir? A. I paid that—

"Mr. Derrick: I object to that, if the court please, for the reason that he has already stated why, and the purpose of that is obvious. I am going to object to any further questioning.

"The Court: Overruled. Proceed, Mr. Hullverson.

"Q. (By Mr. Hullverson) Why did you pay that money? A. I paid that $308 on account of my driver's license, in accordance with the Safety Responsibility Act [V.A.M.S. § 303.010 et seq.]

"Q. To save your driver's license?

"Mr. Derrick: Object.

"A. That's right.

On recross-examination by his own counsel, over objection that the question called for an interpretation of the law, Nickerson was asked:

"Q. (By Mr. Walsh) At any rate, you were trying to comply with the Safety Responsibility Law? A. That's right.

"Mr. Derrick: Object to that for the same reason.

"The Court: Overruled."

In Mrs. Caldwell's case, she developed from her witness Tritley that Nickerson told Tritley to have the car fixed, and that Nickerson would pay for it. Mrs. Tritley also testified that at the scene of the accident Nickerson had admitted that the collision was his fault, and that on the Wednesday following the accident Nickerson said he would get the Tritley car fixed, and did so. And in his argument to the jury counsel for Mrs. Caldwell contended of Nickerson:

"I think, too, the very fact he admitted it was his fault. He paid for the automobile. You can't get away from that because if it weren't his fault, he certainly wouldn't have volunteered to have Mr. Tritley take it to the place to have it repaired and pay the repair foreman for it. They don't do it unless there is liability or responsibility and at fault."

We have quoted liberally from the record because in sustaining the motion for a new trial the court stated that the defendants were prejudiced " * * * by the explanation of why defendant Nickerson made a statement of liability at the time of the accident and then was permitted to testify as to why he made the statement which injected the question of insurance * * *." To begin with, the defendant Nickerson did not explain why he made a statement of liability at the time of the accident. In fact, he denied repeatedly that he had ever admitted to anyone that the collision was his fault. Also, it will be noted that Nickerson's explanation of why he had paid for the repairs to the Tritley car came into the case without any objection, while he was being cross-examined by counsel for Mrs. Caldwell. Furthermore, it is doubtful that a proper objection was made that Nickerson's explanation injected the matter of his lack of liability insurance in the case; the objection that "the purpose of that is obvious" would scarcely raise that objection.

Finally, assuming that the defendant Caldwell properly objected, and that Nickerson's reference in his explanation to his driver's license and the Safety Responsibility Law thereby informed the jury of his lack of liability insurance (of which we are by no means certain), Nickerson's testimony was admissible. Throughout the trial counsel for Mrs. Caldwell sought to impress upon the jury that Nickerson's admitted payment for the repairs to the Tritley car was a tacit admission against interest by Nickerson that the collision was his fault. Such was the import of the questions put to Nickerson during his cross-examination. Since defendant Caldwell injected the subject of payment for the repairs during her cross-examination of Nickerson, the latter was entitled on redirect examination to make a full explanation of the matter so as to rebut the discrediting effect of his testimony on cross-examination, including his reasons for making the payment. City of St. Louis v. Worthington, 331 Mo. 182, 52 S.W.2d 1003; State v. Vickers, 209 Mo. 12, 106 S.W. 999. And this was so, even though the explanation Nickerson gave may have revealed a fact prejudicial to Mrs. Caldwell. Brendel v. Union Electric Light & Power Co., Mo., 252 S.W. 635; Johnson v. Minihan, 355 Mo. 1208, 200 S.W.2d 334.

It follows that the order of the trial court granting defendants a new trial should be set aside and the case be remanded with directions to reinstate plaintiff's verdict and judgment. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, order for new trial is set aside and case remanded with directions to reinstate plaintiff's verdict and judgment.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.