CARL E. JOHNSON, Appellant, v. C. M. MINIHAN and C. M. JOHNSON, Co-Partners doing business as NORWOOD TRANSFER AND STORAGE COMPANY.—No. 39809.—200 S. W. (2d) 334.

Division One, March 10, 1947.

*Jesse E. Bishop* for appellant.

*Moser, Marsalek, Dearing & Carpenter, Will B. Dearing* and *Lee M. Carter* for respondents.

DALTON, C.—Action for $25,000 for personal injuries sustained in a motor vehicle collision alleged to have been caused by defendants' negligence. Verdict and judgment were for defendants and plaintiff has appealed.

Error is assigned on the trial court's refusal to permit plaintiff's witness, Herman Smith, to explain on re-direct examination the circumstances under which defendants had obtained his signature to an exhibit which they used in cross-examination to impeach and discredit the testimony he had given on direct examination.

The collision occurred on the night of July 22, 1940, near Thurman's place on U. S. Highway 66, one-half mile east of St. Clair, Missouri. Smith was the owner of a 1929 Nash automobile and he was operating it ▮ when it collided, head on, with a 1936 Ford tractor and cattle trailer operated on behalf of defendants. Plaintiff, a guest in the rear seat of the Nash automobile, received severe and permanent injuries.

On direct examination, Smith testified that he resided with his wife and daughter in St. Clair. He was employed at Union (nine miles away) and had worked the day the collision occurred. He returned to his home about 6:30 P. M. and, after supper, his brother-in-law, Louis Ziegler, came to the house. They had two bottles of beer each about 8 P. M. Ziegler asked to be taken to Richwoods (eighteen miles away) to see a young lady and Smith took him out there, but the girl was not at home. Smith and Ziegler each had a bottle of beer at a tavern near Richwoods, then they returned to St. Clair, and later, went to Thurman's place for a sandwich and soda. About 10:30 P. M. they went to a filling station in St. Clair where plaintiff was employed. Later, plaintiff suggested he was hungry and asked Smith to drive him out to Thurman's place and Smith did so. When they arrived, Thurman's place was closed. Smith drove in at the west end of a half circle driveway on the south side of the highway, crossed to the far (east) end of the drive, stopped about 3 feet back from the slab, looked both ways, saw nothing, went to low gear, then to second and to high, came out on the pavement, crossed to the far (north) side of the highway and headed back to St. Clair on the (north) right hand side of the highway, and within 30 yards the collision occurred. Smith did not see the approaching truck until it was very close to him, about 40 feet away. It was partly over the black line traveling pretty fast, something like 25 miles per hour, and it hit the automobile head on.

On cross-examination, a two page exhibit was presented to the witness. He identified his signature at the bottom of each page and admitted that he had signed the exhibit on the day after the collision. He admitted having made some of the statements contained therein, but denied having made others. He said that the document was not in his handwriting; that it was written by a person representing the truck company; that only part of the statement was read to him before he signed it; and that a part of it was not read to him. He denied having made the following statements, appearing over his signature in the exhibit, and said they were not read to

him. "On Monday night between one and two o'clock (Tuesday morning) I was driving my 1930 Nash and was involved in an accident. I was not intoxicated but I had been hauling Louis Ziegler around with me and we had had a few drinks at various places. . . . We picked up 'Pig' Johnson (plaintiff) who was pretty drunk. . . We had two beers at the saloon on Main Street in St. Clair before we picked up Johnson. . . when we got there (Thurman's) it was closed. . . And when I pulled out of the drive of the tavern about 1½ east of St. Clair I was struck by a Norwood truck that went into the ditch on the north or its left side of the road and burned up. . . I do not think the driver of the truck could see me as my headlights were dim and the front of my car was facing the north side of the slab assuming the road runs east and west. Altho I had consumed a number of drinks during the evening I could still see pretty good. . . Ziegler and Johnson had passed out as a result of drinking. . . There were no independent eye witnesses since there was no other traffic on the road at the time of the accident which was the reason I didn't stop before coming back on the slab."

On re-direct examination, when plaintiff's counsel advised the court that he was going to ask the witness what else he signed at the time and what the circumstances were under which he signed this document without reading it, defendant's counsel objected. Out of the presence and hearing of the jury, the witness said that, on the day after the collision, an attorney for the trucking company, with two other men, came to his house and took him out to the scene of the collision. In explaining how he happened to sign the document, the witness testified that the attorney said "he wanted to make a settlement with me . . . and he had to have a paper to show that he had made a settlement, and he wrote it down and read it to me and I signed it and he gave me a ▮▮ check for the damage to the automobile. . . He told me I had to sign that before he give me my check for settlement. . . He said I had to sign that so that he had a receipt to show he made settlement with me, to take back with him." The witness did not receive a copy of the statement. On inquiry by the court, the witness said he was paid $150 for the *settlement,* not for making the *statement.* The evidence heard was objected to on the ground that it threw "no light upon this statement," "did not explain the statements which witness said he never made" and the offering was an attempt to show "liability or a confession of liability by settling." The objection was sustained and the further re-direct examination of the witness limited to stating that he quit school at the fifth grade; that he didn't write the statement; that he didn't read it; that only a part of it was read to him; that he told the attorney about the collision and how it happened; and that he was asked to sign the statement and did

sign it. His reasons for signing the document and the other circumstances attending the signing of it, as above stated, were excluded.

In view of the issue presented, it will be necessary to state only a few additional facts. Plaintiff and Ziegler corroborated Smith's testimony and said the automobile was going west on the north side of the highway and the truck was traveling on the "wrong side of the road." Defendants' truck driver said he was traveling down hill on his side of the road at about 30 miles per hour; that the automobile was slowly entering the highway from the south about 100 feet in front of the truck; and that the automobile got only half way across the south half of the slab. The truck driver turned to the left to avoid a collision, but the automobile hit the right fender of the truck and put it in the ditch on the north (left) side of the road. Plaintiff submitted the cause on defendant's negligence in failing to turn the motor truck to the right of the center of the highway so that the automobile could pass without interference and defendants submitted the issue on Smith's negligence, as the sole cause, in driving upon the highway in such close proximity to the approaching truck that the driver could not avoid a collision.

Did the court abuse its discretion in excluding the proffered evidence? The rule is well established that "after a witness has been cross-examined the party calling him may, by re-direct examination, afford the witness opportunity to make full explanations of the matters made the subject of cross-examination so as to rebut the discrediting effect of his testimony on cross-examination and correct any wrong impression which may have been created." City of St. Louis v. Worthington, 331 Mo. 182, 52 S. W. (2d) 1003, 1009; Glasco Elec. Co. v. Union Elec. Light & Power Co., 332 Mo. 1079, 61 S. W. (2d) 955, 959; Weiner v. Mutual Life Ins. Co., 352 Mo. 673, 179 S. W. (2d) 39, 43; Larkin v. Wells (Mo. App.), 12 S. W. (2d) 510, 511; Pfiffner v. Kroger Groc. Co. (Mo. App.), 140 S. W. (2d) 79, 83. A witness on re-direct examination may give his reasons for his actions in order to refute unfavorable inferences from matters brought out on cross-examination. State v. Vickers, 209 Mo. 12, 31, 106 S. W. 999. He may state the circumstances connected with the matter inquired about, although the facts brought out may be prejudicial to the other party. Brendel v. Union Elec. Light & Power Co. (Mo. Sup.), 252 S. W. 635, 641 (9). "Where the one party, on cross-examination of a witness, opens up a line of inquiry which is designed to discredit the witness in the eyes of the jury, the courts go very far, . . . in permitting the other party, on re-direct examination, to bring out those aspects of the matter which are favorable to the witness, even though, without the foundation, the evidence thus brought out would be wholly unjustifiable." Couch v. St. Louis Public Service Co. (Mo. App.), 173 S. W. (2d) 617, 623;

Long v. F. W. Woolworth Co., 232 Mo. App. 417, 109 S. W. (2d) 85, 91 (11).

██ It is further well settled that the scope and extent to which the re-direct examination of a witness shall be permitted to go is a matter to be left largely to the sound discretion of the trial court and its ruling in this respect will not be disturbed unless an abuse of discretion is clearly ██ shown. Stillwell v. Patton, 108 Mo. 352, 363, 18 S. W. 1075; State ex rel. State Highway Commission v. Bengal (Mo. App.), 124 S. W. (2d) 687; Couch v. St. Louis Public Service Co., supra, 173 S. W. (2d) 617, 623.

██ Respondents apparently agree with these general principles of law, but they insist "the disclosure of the settlement to the jury would not have explained the discrepancy between the witness' testimony and the contents of the statement which he signed, for the reason that the witness denied having made the disputed declarations." Respondents' theory further is that the trial court afforded appellant's witness sufficient opportunity "to show his educational background and to give his explanation concerning the contents of the statement so as to rebut the discrediting effect of his testimony on cross-examination and to correct any wrong impression which may have been created." Respondents say the court only rstrained appellant's efforts to rehabilitate the witness by refusing to permit him to show that respondents had *settled* with the witness.

We think the court unduly and prejudicially restricted appellant's right of re-direct examination. The witness admitted that he signed the exhibit presented to him, but the court refused to permit witness to fully explain the circumstances under which his signature was obtained. His reason for signing the document and the attendant circumstances were excluded. At the close of the re-direct examination, the presence of the witness' undisputed signature upon the instrument containing the statements, which the witness said he did not make and which he said were not read to him, was not fully explained. The mere statement that the attorney asked the witness to sign it and that he did sign it, did not disclose the true facts and circumstances, as disclosed by the record, which moved the witness to sign the document used to discredit him; nor was the jury sufficiently advised concerning the facts to determine the true weight and value of the signed document admittedly produced by respondents for the purpose of impeaching the witness and affecting his credibility before the jury.

Respondents, however, contend that in determining the admissibility of evidence it is essential to consider the object and purpose for which it is offered; and that the real object and purpose of appellant in attempting to rehabilitate the witness was to develop the fact of the settlement and so "establish an admission of liability by the defendants." On the other hand, one might argue that respond-

ents' real object and purpose in presenting the exhibit in question may have been to get damaging and otherwise incompetent evidence before the jury, rather than merely to impeach the witness, but the rule is well settled that evidence admissible for one purpose cannot be excluded because inadmissible for another purpose. "The rule is recognized and established by many decisions of this court that where evidence is admissible for one purpose or one issue but would be improper for other purposes and upon other issues in the case, it should be received. The opponent then has a right to an instruction if he should request it limiting the extent to which and the purpose for which the jury may consider such evidence." State ex rel. Kansas City Public Service Co. v. Shain, 345 Mo. 543, 134 S. W. (2d) 58; Ferril v. Kansas City Life Ins. Co., 345 Mo. 777, 785, 137 S. W. (2d) 577; Hammond v. Shuermann Bldg. & Realty Co., 352 Mo. 418, 177 S. W. (2d) 618, 620; Holekamp v. Hines (Mo. App.), 170 S. W. (2d) 90, 94.

While disclosure of the settlement (otherwise incompetent) would necessarily appear from the witness' explanation of his reason for signing the instrument containing the disputed statements, such disclosure would be incidental and subordinate to appellant's right to rehabilitate the witness and have the witness explain the circumstances under which his signature was secured on the damaging exhibit. Respondents, after presenting the document and cross-examining the witness with respect thereto for the purpose of impeaching him and affecting his credibility before the jury, may not thereafter complain of appellant's exercise of the right to have the witness fully explain the matter about which he was cross-examined. He may state the circumstances and give the reasons which cause him to attach his signature without reading the document.

Respondents finally contend that the rejection of the testimony was within the sound discretion of the trial court; and that no abuse of that discretion and no prejudice to appellant appears from the record. Respondents cite Daudt v. Steiert (Mo. Sup.), 205 S. W. 222, 225, to the effect that "The entire subject of the manner of the examination of witnesses in open court is confided, of necessity, to the sound discretion of the trial judge. It is limited by few fixed rules flexibly administered, and properly so. The object is to elicit the truth. In the accomplishment of this, manner is immaterial. Unless it be shown, therefore, that the party complaining has been prejudiced, he should not be heard." Respondents insist that the scope of re-direct examination allowed was sufficient to explain, modify and rebut, in so far as the facts permitted, the matters referred on cross-examination; and that refusing to permit Smith to testify that he had settled with defendant, did not exclude any explanation, since the settlement was not related to the statements which were denied. Respondents fur-

ther argue that the settlement with Smith and the payment of damages to him "did not in any way tend to explain (in aid of the credibility of the witness) the written statement appearing over his signature"; that Smith denied making the statements and claimed he didn't know they were there; that the settlement and the statements were "separate subjects altogether"; and that if Smith had admitted making the statements and "wanted an opportunity to explain why he made such statements, the question might be different." We think the presence of the witness' admitted signature was the matter for explanation and the matter of the settlement cannot be separated from it. The evidence offered and excluded was material and directly tended to explain the presence of the witness' signature and, if believed by the jury, would have materially rehabilitated the witness. The settlement and payment were part and parcel of the transaction by which the signature was obtained. Prejudice to the appellant appears from the record. The trial court abused its discretion in unduly limiting the re-direct examination of the witness.

The judgment is reversed and the cause remanded. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.