(640 P.2d 1282)

No. 52,672

ENGLISH VILLAGE PROPERTIES, INC., *Appellee,* v. BOETTCHER & LIEURANCE CONSTRUCTION CO., INC., A Kansas Corporation, and INSURANCE COMPANY OF NORTH AMERICA, A Pennsylvania Corporation, *Appellants.*

Petition for review denied April 14, 1982.

Opinion filed February 18, 1982.

*Russell Shultz* and *Orval L. Fisher,* of Shultz, Fisher, Monnat & Shultz, of Wichita, for appellants.

*John P. Woolf,* of Martin, Pringle, Fair, Davis & Oliver, of Wichita, for appellee.

Before ABBOTT, P.J., PARKS & MEYER, JJ.

MEYER, J.: This appeal stems from a suit for breach of a construction contract.

English Village Properties, Inc. (appellee), a motel corporation, contracted with Boettcher & Lieurance Construction Co., Inc. (appellant construction company) to demolish an older part of the motel and to construct a new 16-unit building in its place. The contract recited a price of $167,940.00. A performance bond was executed with Insurance Company of North America (appellant bonding company).

Soon after completion of the construction, marlite paneling in the bathrooms began buckling, and red splotches and lumps appeared on the interior walls of the motel rooms. Appellee demanded correction of these problems, and withheld $5,000 from the contract price. Appellee contracted with third parties to have some of the repairs done, and also brought suit against appellants for the cost of repairs which were still necessary.

The jury returned a verdict in favor of appellee and against both appellants in the amount of $117,977.00. The court reduced the judgment to $112,977.00, reflecting the $5,000.00 previously withheld by appellee from payment on the contract. From this verdict, both appellants appeal, citing numerous points of error.

Appellants first claim that the evidence was insufficient to go to the jury, and that the trial court therefore should have granted their motion for a directed verdict. Specifically, two areas of concern are pointed out: one as to proof of causation, and the other as to proof of damages.

It is stated in *Care Display, Inc. v. Didde-Glaser, Inc.,* 225 Kan. 232, Syl. ¶ 5, 589 P.2d 599 (1979):

"In ruling on a motion for directed verdict pursuant to K.S.A. 60-250, the court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought, and where the evidence is such that reasonable minds could reach different conclusions thereon, the motion must be denied and the matter submitted to the jury. The same basic rule governs appellate review of a motion for a directed verdict. (Following *Simpson v. Davis,* 219 Kan. 584, Syl. ¶ 3, 549 P.2d 950 [1976].)"

Discussing the scope of appellate review, it has been held that:

"When a verdict is attacked on the ground it is contrary to the evidence, it is not the function of this court on appeal to weigh the evidence or pass on the credibility of the witnesses. If the evidence with all reasonable inferences to be drawn therefrom, when considered in a light most favorable to the successful

party below, will support the verdict this court should not intervene." *Timsah v. General Motors Corp.*, 225 Kan. 305, Syl. ¶ 1, 591 P.2d 154 (1979).

Appellants argue that the evidence linking appellee's damages causally to breaches by appellant construction company was speculative.

The evidence made clear that the cause of the damage was water inside the walls. There was conflicting evidence concerning how the water came to be in the walls and who was responsible for the damage. Some evidence indicated that it came from the outside, through holes in the exterior walls. Other evidence indicated the moisture problem was caused by water used in drilling holes in prefabricated concrete slabs. This drilling was performed by a contractor hired by appellee after the slabs arrived without the holes having been drilled. There was evidence that the appellant construction company was responsible for seeing that these holes had been drilled prior to the arrival of the slabs at the construction site. Finally, there was evidence that moisture which became trapped between the vinyl wallpaper and styrofoam insulation was the cause of the room damage; this moisture would have come from the paste used in hanging the wallpaper.

It is true that it is essential to a plaintiff's recovery that he prove with reasonable certainty that the damages complained of resulted from the acts or omissions of the defendant. *Apperson v. Security State Bank*, 215 Kan. 724, 735-36, 528 P.2d 1211 (1974). However, this rule does not mandate that such proof be with absolute certainty.

Appellants contend that because several possible causes of the damage were suggested, the jury was somehow precluded from determining that one of these was the actual cause, to the exclusion of the others. On the contrary, it is the function of the jury to weigh conflicting evidence and to reach findings of fact therefrom. 47 Am. Jur. 2d, Jury § 3, p. 628. That is precisely what the jury in this case did regarding the issue of causation.

In their brief, appellants also cite cases in support of the rule that it is impermissible to allow opinion testimony which consists of an inference upon an inference, and argue that the opinion evidence regarding causation in this case violated that rule. We do not agree. The condition of the walls was shown directly by the evidence. The only inference drawn was that of how the water

got into the walls, and this inference was drawn in opinion testimony given by various witnesses to explain the possible sources of the moisture. The trial court did not err in admitting this opinion evidence, for it was within the jury's province to accept or reject each inference which could be drawn from the evidence.

Furthermore, it was held in *Plains Transp. of Kan., Inc. v. King,* 224 Kan. 17, Syl. ¶ 3, 578 P.2d 1095 (1978):

"As many inferences may be drawn from a fact, or state of facts, as can be justified, so long as each has a factual foundation, without violating the rule against inference based on inference."

Appellants' arguments on this issue go more to the weight and credibility to be given individual testimony than to the sufficiency of the evidence, and are beyond our scope of review. We conclude there was sufficient evidence in this case to go to the jury on the issue of whether the damages were caused by appellant construction company.

Appellants next challenge the sufficiency of the evidence showing what repairs were, in fact, necessary. They argue that the estimates of the cost of repairs were therefore too speculative to go to the jury.

Appellee's estimate of damage was the cost of tearing out and replacing the wallpaper, Sheetrock, insulation, and furring strips in order to clean, dry, and disinfect the underlying block in every room.

The estimate for interior repairs was arrived at by an expert, who testified concerning how much it would cost to tear out the wallpaper, Sheetrock, insulation and furring strips in one room ($5,553.00), and then, by multiplying that amount by the number of units (16), arrived at the final figure of $88,848.00. This same witness also testified that each room would be out of service for a period of from 30 to 60 days; this opinion was used as a basis for calculating appellee's lost profits due to inability to rent the rooms while the repairs were in progress. This expert did not, however, testify that all these repairs were in fact necessary; this, argue appellants, makes the estimates of damage too speculative for consideration by the jury.

The general rule governing recovery of damages has been stated as follows:

"One who claims damages on account of a breach of contract must not only show

the injury sustained, but must also show with reasonable certainty the amount of damage suffered as a result of the injury or breach. [Citation omitted.] In order for the evidence to be sufficient to warrant recovery of damages there must be some reasonable basis for computation which will enable the jury to arrive at an approximate estimate thereof. [Citation omitted.]" *Venable v. Import Volkswagen, Inc.,* 214 Kan. 43, 50, 519 P.2d 667 (1974).

There was no direct testimony that all the repairs proposed by appellee would be necessary in order to correct the problem. There was, however, testimony that in at least one wall in one of the units, the Sheetrock was found to be mushy, the insulation was wet, and the block was wet. The evidence indicated that moisture caused the buckling of the marlite and also caused the mold and lumps to form on the wallpaper. There was also testimony that every room in the new addition had some problems with either mildew or mold, or with failure of the marlite to stick; this evidence indicated that the moisture problem was widespread. The jury also viewed the premises.

The estimates of cost of repairs given by appellee's expert witness were not offered as proof of the necessity of such repairs; rather, they provided the jury with the reasonably certain basis for computing the approximate amount of damages mandated by *Venable.* The evidence of widespread moisture problems and resultant damage would properly support a conclusion by the trier of fact that some or all of the proposed repairs were in fact necessary. The jury was free to determine for itself exactly which of the proposed repairs were truly necessary to alleviate the moisture problem. Having made such a determination, it could then use the estimates offered by appellee to place a value on the damages, including profits lost while the rooms underwent repair. Viewing all the evidence and inferences therefrom in the light most favorable to the appellee, as we must on review, we believe that the issue of amount of damages was properly placed before the jury. The trial court did not err in denying appellants' motion for a directed verdict.

Appellants next assign as error the trial court's admission of certain evidence relating to the computation of damages. We note, however, that appellants failed to object at trial to the admission of any of this evidence. K.S.A. 60-404 provides:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."

It has also been stated:

"K.S.A. 60-404 is a codification of the state's prior law and provides that a verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection. [Citations omitted.]" *State v. Estes,* 216 Kan. 382, 385, 532 P.2d 1283 (1975).

Appellants are therefore barred from asserting these points on appeal.

Appellants' third major area of concern involves several of the instructions read to the jury. Before addressing each of the particular points that appellants assign as error, we note that K.S.A. 60-251 codifies the scope of review to be applied when jury instructions are attacked on appeal. Specifically, 60-251(*b*) provides:

"No party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict stating distinctly the matter to which he or she objects and the grounds of his or her objection unless the instruction is clearly erroneous."

Applying the rule stated above, we shall examine each individual instruction of which appellants now complain to see if there was reversible error committed in this area.

Appellants claim that instruction Nos. 3 and 4 erroneously shifted some of the burden of proof to them (defendants); a timely and specific objection to these instructions was made at the trial. Instruction No. 4 defined "burden of proof"; it did not purport to allocate the burden between the parties. This instruction was a correct statement of the general rule and is a verbatim recitation of PIK Civ. 2d 2.10. We find no error here.

Instruction No. 3, on the other hand, does pose a problem. It reiterated the theories of each party and allocated burdens of proof on particular issues between the parties. The instruction contained in its last sentence a statement which should have been omitted. That instruction is as follows:

"Plaintiff contends that Boettcher & Lieurance Construction Company, Inc. breached the written contract whereby the defendant agreed to construct a new addition to the English Village Motel in Wichita, Kansas. Plaintiff contends that defendant Insurance Company of North America breached its duty under a Performance Bond whereby defendant Insurance Company of North America bound itself as the surety on the performance of the construction contract.

Plaintiff claims that it sustained damages as a result of both of these breaches of contract. The plaintiff has the burden to prove that its claims are more probably true than not true.

"The Defendants contend that they did not breach the contract, that they did substantially perform the contract. The Defendants further contend that if there was any damage, it was a result of work performed by others, other than the contractor and its agents or subcontractors. Defendants further contend that if there was any damage suffered by the Plaintiff, that such damage was trivial in nature and that the Plaintiff failed to minimize damages.

*"The Defendants have the burden to prove that its claims of fault on the part of the Plaintiff are more probably true than not true."* (Emphasis added.)

This instruction was structured from PIK Civ. 2d 6.01. The final sentence is, however, suggested for use in cases involving the affirmative defense of comparative negligence. In such a setting, it is undoubtedly a correct statement of the law; applied to a breach of contract case, it can admittedly cause the jury some confusion. It is possible, as appellants suggest, that this final statement may have made the jury believe that the defendants were obligated to prove their own innocence in the matter, thus erroneously shifting the primary burden of persuasion from the plaintiff-appellee to the defendants-appellants. Such a shift, argue appellants, would have enabled the jury to find for appellee without first determining that its claims against appellants were more likely true than not.

While we recognize that instruction No. 3 was not the best instruction under the particular circumstances, we believe that when viewed in its entirety, its essential message was a proper statement of the law, and that it was not so misleading as to confuse the jury. The instruction properly states the theory supporting appellee's claim against appellants that they had breached their respective contracts and that these breaches resulted in injury to appellee. It was also a correct statement of appellants' defense: that they had not breached the contract, but had rendered substantial performance, and that if appellee had suffered any injury, it was trivial and avoidable and at the hands of some third party not in privity with appellants. It is true that appellants' defense was a denial, not a claim; neither of the alternative theories offered by appellants was an affirmative defense. Therefore, it did not devolve upon appellants to prove or disprove anything at trial. Nevertheless, the appellee's theory and that of appellants are mutually exclusive. In reaching its verdict, the jury would have to determine which party's theory was more

likely true than not. A finding in favor of one party would be a rejection of the other party's theory. Further, instruction No. 4 did admonish the jury to "consider all the evidence, whether produced by the Plaintiff or Defendant" in reaching its conclusion on each and every issue of fact before it, regardless of which party had the burden of proof.

We are of the opinion that instruction No. 3 sufficiently informed the jury of its function and purpose; the instruction adequately summarized the positions of the parties. The inclusion of the final sentence in that instruction was error and should not be employed except in cases where a true affirmative defense has been asserted. While such an inclusion could be error mandating reversal in another situation, we hold that in this case the error of the trial court was harmless and does not appear to have prejudiced any substantial right of appellants. It is not necessary for us to reverse the judgment on this ground. K.S.A. 60-261.

Appellants also assert that instruction No. 6, relating to expert opinion testimony, was error; they did object to the giving of this instruction at trial. This instruction was taken verbatim from PIK Civ. 2d 2.50, and is a correct statement of the law. No error is found in giving this instruction.

Appellants also attack the propriety of instruction No. 7. That instruction is as follows:

"You have viewed the premises. You may consider what you have seen along with the other evidence in the case in arriving at the amount of the compensation to be awarded to the plaintiff, if any."

It is argued that this instruction allowed the jurors to speculate on their personal observations, without correlating what they have viewed to the evidence presented in the courtroom. We note a passage from PIK Civ. 2d 1.40, wherein it concludes:

"What you (see)(have seen) at the scene you may take into consideration in arriving at your verdict in so far as what you (see)(have seen) is supported by evidence coming to you in the courtroom."

It is apparent that instruction No. 7 as given does not state the fact that conclusions drawn from a viewing should also be supported by courtroom evidence, as clearly as PIK Civ. 2d 1.40. Because appellants failed to object to the giving of this instruction, though, we cannot reverse on this ground unless we find the instruction to be clearly erroneous. K.S.A. 60-251. Appellants have not demonstrated to us that any prejudice in fact occurred

because of the wording of instruction No. 7. Absent an affirmative showing of actual jury misconduct based on this poorly-stated instruction, we do not feel that the meaning of the instruction deviates from the substance of PIK Civ. 2d 1.40 enough to term the instruction clearly erroneous.

Appellants also assail instruction No. 10; that instruction is as follows:

"If you find for the Plaintiff, you should then determine its recovery. The amount of such recovery should be whatever sums you find are necessary to restore the property to the condition that it would have been in had the contract been fully performed, plus a reasonable amount to compensate for loss of use of the property while repairs are being made with reasonable diligence. The total amount of Plaintiff's damages may not exceed the sum of $135,058.78."

Appellants attack this instruction on appeal on several grounds; some of these grounds were stated in objections at trial, others were not. We will address each of these grounds in turn.

Appellants insist that the instruction inadequately details the elements of damage claimed. They objected and requested an instruction which listed each particular element of damage supportable by the evidence, and they now submit that it was error to refuse their request. The instruction as given was a sufficient statement of the elements of damage; there was no need to list each particular defect of which appellee complained. We find no error in this regard.

Appellants also objected at trial, and contend on appeal, that the instruction failed to require the jury to connect the appellee's recovery of damage to some act or omission of appellants. They offered a requested instruction taken directly from PIK Civ. 2d 18.07, which contains a statement requiring a connection between plaintiff's damages and defendant's conduct; this request was not honored. Appellants insist that this failure was fatal to the verdict because no other instruction stated this requirement. We disagree. Appellants are partially correct; instruction No. 10 contains no language indicating that a finding for appellee requires a determination that the damages were a result of some act or omission of appellants. However, instruction No. 3 (which was itself attacked on other grounds and is reproduced earlier in this opinion) contains language which fills the gap left in instruction No. 10. Instruction No. 3 first states that appellee contends that both appellants breached contracts with it; it then continues "[appellee] claims that it sustained damages *as a result of both of*

*these breaches* of contract. The [appellee] has the burden to prove . . . its claims . . . ." (Emphasis added.) This instruction, we believe, made it clear to the jury that to recover appellee must prove its damages and that these damages were caused by appellants.

Moreover, as was stated in *Huxol v. Nickell,* 205 Kan. 718, Syl. ¶ 6, 473 P.2d 90 (1970):

"Instructions are to be construed together and are sufficient if, taken as a whole, they properly state the law."

Appellants' argument on the above ground as to instruction No. 10 is without merit.

The three remaining grounds upon which appellants attack instruction No. 10 were not made part of their objections at trial; we may therefore reverse on one of these grounds only if we find the instruction to be clearly erroneous. K.S.A. 60-251.

First, appellants contend that the trial court erred in submitting the issue of damages to the jury, in that its instruction as to the measure of damages contained an improper computational formula under the circumstances in this case. Appellants argue that the "diminution in value" formula, not the "cost of repair" formula, should have been applied in assessing appellee's damages.

The "cost of repair" rule is recognized in this state for computation of damages from a breach of a construction contract.

"When a building contract has been so far performed that the building is occupied and used by the owner for the purposes contemplated by the contracting parties and where correction or completion would not involve unreasonable destruction of the work done by the contractor evidence of the cost of correcting the defects and completing the omissions will, as a general rule, be a fair measure of the damages." *Mahony, Inc. v. Galokee Corporation,* 214 Kan. 754, 757, 522 P.2d 428 (1974).

It is true that the repairs which were contemplated involved a destruction and rebuilding of much of the interior work done by appellants, but it appears that the jury could have concluded from the evidence that all the proposed repairs were necessary to put the motel in the condition it would have been in had the contract been performed according to all specifications. For this reason, it was not error for the court to submit the damages issue to the jury based upon the "cost of repair" rule.

Appellants argue that the jury verdict, as returned, was exces-

sive. It is true that the verdict amounts to approximately 70 percent of the original contract price, but some of this is due to the fact that the trial court allowed evidence of inflation in construction costs between 1976 and 1980. It is stressed that damage on account of breach should be valued as of the date of the breach. 22 Am. Jur. 2d, Damages § 52, p. 81. This is true, but appellants did not object to this evidence of inflation at the time of its admission. Further, *Seaman U.S.D. No. 345 v. Casson Constr. Co.,* 3 Kan. App. 2d 289, 594 P.2d 241 (1979), stands for the proposition that, in the interests of fairness and equity, it is sometimes proper to compute the measure of damages at some time after the date of the breach. We are not prepared to state that this principle could not apply to this case. And finally, appellants' argument is negated by the holding in *Sippy v. Cristich,* 4 Kan. App. 2d 511, 519, 609 P.2d 204 (1980), that where a trial court has as its only evidence the cost of repairs, this can be used to compute the difference in value between the contract as proposed and as actually performed.

Appellants last attack on instruction No. 10 regards the maximum figure stated therein; they allege that the record does not support this amount. Our own review of the record indicates that the evidence would support a recovery in excess of $135,058.78, the maximum recovery allowed by the instruction. Therefore, no error is shown.

Appellants also contend that the trial court erred in refusing their request that certain interrogatories be submitted to the jury. It has been held that:

"Under K.S.A. 60-249(*b*) the trial court is given discretionary powers in the area of special questions, and it may refuse to give special questions even though they relate to issues of fact raised by the pleadings or evidence in the case, absent a showing that the trial court abused its power of discretion." *Thompson v. General Finance Co., Inc.,* 205 Kan. 76, 78, Syl. ¶ 18, 468 P.2d 269 (1970).

While the interrogatories proposed by appellants were proper under the circumstances, and answers to them might even have proved helpful, they were not essential. Therefore the trial court did not abuse its discretion by refusing to submit them to the jury.

Appellants' last point of error regards certain communications between a court services officer and the jury. Without here reviewing the particulars of this communication, we have examined

this point and find that the communication was not improper and did not prejudice the rights of appellants.

In summary, we have considered each issue raised by appellants. As previously noted, some minor errors are evident from the record. But we do not feel that any of these errors alone, or all of them standing together, are sufficiently prejudicial to warrant the reversal of this case.

Affirmed.