Joel L. **TONKIN,** et al.,
**Respondents–Appellants,**

v.

The **BOB ELDRIDGE CONSTRUCTION COMPANY, INC.,** et al.,
**Appellants–Respondents.**

No. WD 42556.

Missouri Court of Appeals,
Western District.

March 5, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 30, 1991.

Application to Transfer Denied
June 11, 1991.

David A. Vorbeck, Kansas City, for respondents-appellants.

Leonard J. Johnson, Kansas City, for appellants-respondents.

Before LOWENSTEIN, P.J., and BERREY and GAITAN, JJ.

BERREY, Judge.

Joel L. Tonkin, as general partner of two Kansas limited partnerships, Plaza West Apartment Company (Plaza West) and Bluejacket Lodge Apartment Company (Bluejacket) filed a breach of contract action against The Bob Eldridge Construction Company, Inc. (Eldridge Construction), R. Karl Eldridge, Walter K. Eldridge and Robert R. Eldridge, its statutory trustees, and Fireman's Fund Insurance Company. After a jury verdict in favor of plaintiffs, both sides appeal. Eldridge Construction, et al., raises four points on appeal claiming: (1) the trial court erred in admitting the evidence and testimony of plaintiff's expert engineer as to the cost of a new exterior system as such was beyond the scope of proper redirect; (2) the trial court erred in admitting the evidence and testimony of plaintiff's expert engineer as to cost of installation of a new exterior because such evidence was irrelevant and prejudicial and not a proper measure of damages; (3) the trial court erred in giving Instructions No. 7, 8, 13 and 14 as to defendant's contractual obligations; and (4) the trial court erred in allowing exhibit 98, the "Tremco manual" into evidence since that manual was

hearsay. Plaintiffs also appeal, alleging that: (1) the trial court erred in its refusal to grant plaintiffs' post-trial motion for attorneys' fees because Fireman's failure to pay plaintiffs' losses was without just cause or excuse; (2) the trial court erred in its refusal to grant plaintiffs' post-trial motion for attorneys' fees because Kansas law provides that the language used in the performance bond includes such fees; and (3) the trial court erred in failing to grant plaintiffs' post-trial motion for prejudgment interest because the refusal to pay was unreasonable and vexatious.

On November 1, 1976, Eldridge Construction entered into a contract with plaintiffs for the construction of an apartment complex, Bluejacket Lodge, to be located in Shawnee Mission, Kansas. That same day, Fireman's Fund, as surety, issued a performance bond on behalf of Eldridge Construction to Bluejacket in the amount of $987,049. On November 4, 1976, Eldridge Construction contracted to construct Plaza West, an apartment complex in Topeka, Kansas. Again, Fireman's Fund issued a performance bond, this time for $1,893,925. In both contracts, Eldridge Construction agreed to correct any defects due to faulty materials or workmanship appearing within one year from the date of substantial completion.

The plans and specifications for both projects were prepared by Osbourn & Associates. Osbourn prepared the construction drawings and supervised construction of the apartment complexes. Specifically, Osbourn prepared specification 7D dealing with caulking for both complexes. Specification 7D, section 1F stated that, "All joints shown on drawings to be caulked and other joints which will permit water or air leakage to the building interior." Section three of that specification instructed the contractor to "insert backing if necessary."

Both Bluejacket and Plaza West were substantially completed in the fall of 1977. Water leaks developed in both projects and these leaks continued up to and including trial despite recaulking by Eldridge Construction in 1978 and 1979. Defendant Fireman's Fund was also informed of the leakage.

The original exterior skin of both apartment buildings was comprised of cement asbestos panels. These panels were attached to the buildings' frames with screws and adhesive. They were separated from each other by caulk joints. No backing was applied behind the caulking and this turned out to be the primary cause of the leaks.

In 1979, appellants filed suit against Eldridge Construction, Fireman's Fund and Travelers Indemnity Company claiming breach of contract and bond as to both Plaza West and Bluejacket. The cause went to trial on June 28, 1989. After hearing expert testimony as to proper methods of construction and cost of repair (which will be detailed later in this opinion) the jury returned verdicts in favor of Plaza West and Bluejacket in the sums of $200,000 and $132,000 respectively. It is from these verdicts that Eldridge Construction and Fireman's Fund appeal.

Plaza West and Bluejacket filed post-trial motions for attorneys' fees and for prejudgment interest against Fireman's Fund. These motions were denied. It is from this denial that Plaza West and Bluejacket appeal.

### The Appeal of Eldridge Construction and Fireman's Fund

In their first point, Eldridge Construction and Fireman's Fund claim that the trial court erred in admitting evidence and testimony of expert engineer, Bob D. Campbell, as to the cost of installation of a new exterior system not called for by the contracts because such was beyond the scope of the re-direct. The scope and extent to which the re-direct examination of a witness is permitted is a matter left to the sound discretion of the trial court. *Johnson v. Minihan*, 355 Mo. 1208, 200 S.W.2d 334, 336 (1947). The ruling of the trial court will not be disturbed unless that discretion has been abused. Missouri has long held the rule that after cross-examination of a witness the party calling him may, by redirect examination, "afford the wit-

ness opportunity to make full explanation of the matters made the subject of cross-examination so as to rebut the discrediting effect of his testimony on cross-examination and correct any wrong impression which may have been created." *City of St. Louis v. Worthington*, 331 Mo. 182, 52 S.W.2d 1003, 1009 (Mo.1932).

On direct examination Mr. Campbell testified that a comparable exterior skin to that used upon Plaza West and Bluejacket is a system called Drivit. On cross-examination Mr. Campbell was asked: "This is a system [Drivit] which is much more expensive; isn't it, than the cement asbestos panels put on the project?" Mr. Campbell answered: "It's competitive." Defense counsel tried to discredit Mr. Campbell's opinion, suggesting that he recommended Drivit because of his familiarity with the system and that his recommendation had previously been to recaulk the building. The following exchange took place:

Q. (By Mr. Vorbeck) Your opinion prior to March of 1989, was that the buildings should be recaulked; wasn't it?

A. That's right.

Q. And yet you say now the building should be reskinned?

A. Or recaulked. I combined that.

Q. You say recaulked?

A. Yes.

Q. You don't know which?

A. I have trouble with the word recaulk. I think it hasn't been caulked yet.

Mr. Campbell upon redirect was allowed to give the costs of putting the Drivit system up; $132,701 plus 40% of $13,400 for Bluejacket and around $208,000 for Plaza West. This was clearly a proper subject for re-direct given defense counsel's cross-examination of Mr. Campbell. No abuse of discretion occurred and Point I is denied.

■ Next, it is claimed that the trial court erred in admitting Mr. Campbell's evidence as to the installation and cost of installation of a new exterior skin for the two complexes because such evidence was irrelevant, immaterial, prejudicial and not the proper measure of damages under Kansas law.

The evidence of the cost of Drivit was properly admitted upon re-direct as demonstrated in the previous section. Even though the evidence may be prejudicial to the other party, it is proper on re-direct to allow this evidence to be presented as a way of refuting the unfavorable inferences from matters brought out in cross-examination. *Johnson v. Minihan, supra,* 200 S.W.2d at 336. Moreover, the discussion of Drivit as to its installation and cost was relevant as a method of repair under Kansas law which uses a cost of repair standard. The Kansas rule is stated in *Jim Mahoney, Inc. v. Galokee Corp.,* 214 Kan. 754, 757, 522 P.2d 428 (1974):

When a building contract has been so far performed that the building is occupied and used by the owner for the purposes contemplated by the contracting parties and where correction or completion would not involve unreasonable destruction of the work done by the contractor evidence of the cost of correcting the defects and completing the omissions will, as a general rule, be a fair measure of the damages.

In *Mahoney* the contractor failed to follow contract specifications requiring the use of double trusses in the roof of a nursing home. The contractor presented evidence that the roof could be repaired from $4,300 to $10,000. Witnesses for the owner testified that a new roof was necessary at a cost of at least $42,000. The jury awarded $42,000 to the owner and this award was upheld.

In the instant case different methods of repair for the building were suggested by various experts. Recaulking was one method mentioned as was the Drivit system. In fact, Mr. Campbell at one point testified that recaulking would cost almost as much money as putting up a new skin because of the intensive hand labor involved.

In *English Village Properties, Inc. v. Boettcher & Lieurance Constr. Co.,* 7 Kan.App.2d 307, 640 P.2d 1282 (1982), several estimates of cost of repairs were

presented to the jury in a case involving moisture damage from poor construction. The court found that, "[t]he jury was free to determine for itself exactly which of the proposed repairs were truly necessary to alleviate the moisture problem." *Id.* 640 P.2d at 1287. So too does the jury in this case enjoy the freedom to determine that re-skinning was the necessary repair for the leaking buildings. Point II is denied.

■ In Point III, Eldridge Construction and Fireman's Fund claim that the trial court erred in giving instructions Nos. 7, 8, 13 and 14 in that they included the duty to construct the buildings "in a workmanlike manner" and that language was inconsistent with the specific language and warranties found in the contracts. Appellant contends that the implied warranty of "in a workmanlike manner" exists only where there is no specific warranty. The contracts at issue provided that Eldridge Construction would perform the work in accordance with the specifications and correct any defects due to faulty materials appearing within one year of the date of substantial completion. The specifications require that, "It is not intended that Work not covered under any heading, section, branch, class or trade of the Specifications shall be supplied unless ... it is reasonably inferable therefrom as being necessary to produce the intended results."

Kansas law provides that, "in the absence of express agreement, there is an implied agreement of warranty, which the law annexes to the contract, that he [the contractor] will do a workmanlike job...." *In re Talbott's Estate*, 184 Kan. 501, 337 P.2d 986, 989 (1959). *See also Tamarac Development Co. v. Delamater, Freund & Associates, P.A.*, 234 Kan. 618, 675 P.2d 361 (1984). Thus, Eldridge Construction and Fireman's Fund argue that because the contract contained provisions for repair and to build in accord with the specifications there was no implied warranty. However, an express warranty against defects for a limited period of time does not act as a limitation upon the obligation to perform the contract in a workmanlike manner. *Hennes Erecting Co. v. National Union*

*Fire Ins. Co.*, 813 F.2d 1074, 1081 (10th Cir.1987). Thus, whatever the effect of the warranties would be in the contract the contractor had the duty to perform in a proper, workmanlike manner. Point III is denied.

■ In Point IV it is argued that trial court erred in admitting an exhibit, the "Tremco" manual, over objection since the exhibit was hearsay. The manual in question is a publication of Tremco, a manufacturer of caulking. It was used in the cross-examination of defense witness Paul Estes, foreman of Wyatt Waterproofing, who caulked the Plaza West building. The manual was identified by this witness on cross-examination as something he relied upon and found trustworthy. Even assuming *arguendo* that the manual was not available as a learned treatise because the witness was not an expert, its admission into evidence was harmless. Other evidence in the record showed that it was necessary to install backing in the caulk joints and therefore the statements from the manual were cumulative. *See Elam v. Alcolac, Inc.*, 765 S.W.2d 42, 215 (Mo.App.1988). Point IV is denied and the judgment below against Eldridge Construction and Fireman's Fund is affirmed.

### *The Cross-appeal of Tonkin from Denial of Post–Trial Motions for Attorney Fees and Interest*

Both buildings involved in this case were completed in the fall of 1977. The buildings leaked then, the buildings leak now. Demands made upon Eldridge Construction and Fireman's Fund yielded nothing. The buildings continued to leak up through and including the time of the trial. Despite demands to correct the problems, little was done to find the cause of the problem. Fireman's Fund sent a representative to a meeting held in spring 1979. This seems to be the sum total of its efforts. Eldridge Construction never attempted repairs after July 23, 1979.

On July 10, 1989, Tonkin as general partner for Bluejacket and Plaza West filed a post-trial motion for attorney fees and prejudgment interest. The trial judge over-

ruled this motion and from this action the present appeal is taken

■ The first matter under consideration concerns whether or not there was error in the trial court's denial of attorney fees. Section 40–256, Kan.Stat.Ann. (1985) sets out circumstances in which attorneys fees shall be allowed by the court:

**40–256. Attorney fees in actions on insurance policies; exception.** That in all actions hereafter commenced, in which judgment is rendered against any insurance company as defined in K.S.A. 40–201, and including in addition thereto any fraternal benefit society and any reciprocal or interinsurance exchange on any policy or certificate of any type or kind of insurance, if it appear from the evidence that such company, society or exchange has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action, including proceeding upon appeal, to be recovered and collected as a part of the costs: *Provided, however,* That when a tender is made by such insurance company, society or exchange before the commencement of the action in which judgment is rendered and the amount recovered is not in excess of such tender no such costs shall be allowed.

It is the term "unjust cause or excuse" which presents the problem for analysis under the facts in this case. Whether the refusal to pay is without just cause or excuse is to be determined on the facts and circumstances of each case. *Watson v. Jones,* 227 Kan. 862, 610 P.2d 619 (1980). This determination is within the trial court's discretion. *Id.* In the instant case the trial court abused that discretion.

The circumstances confronting the insurer at its denial of payment are to be judged "as they would appear to a reasonably prudent man having a duty to investigate in good faith and to determine the true facts of the controversy." *Watson v. Jones, supra,* 610 P.2d at 626. In the instant case the insurer sent a representative to a meeting in 1979. It did nothing else until just before the matter finally came to trial nearly a decade later. It is simply not tenable that this behavior should be considered as a good faith effort on the part of the insurer. Nor is it an answer to shift the responsibility for investigation onto the insured or Eldridge Construction. The court in *Lord v. State Auto. & Cas. Under.,* 208 Kan. 227, 491 P.2d 917, 923 (1971), stated:

We thus again recognized that an insurance company is not required to pay a claim while a bona fide question of liability exists. But at the same time we recognized that the company has a duty to make a good faith investigation of the facts before finally refusing to pay. We have here absolutely no effort, either on the part of the insurance company or its counsel, to investigate (much less "in good faith") the merits of the Ballard claim prior to the final refusal to pay. Instead, the insurance company put the entire burden on its insured, taking the somewhat lofty position that investigation, evaluation, and determination of the claim was not *its* responsibility. That the Ballard claim might be based on erroneous facts, or be a "nuisance" claim, or be wholly frivolous was none of *its* concern; *it* would not deign even to inquire. In short, it did not know and did not care whether its "cause or excuse" for refusing to pay was "just."

"Surely, in the eyes of the law '[J]ust cause or excuse' signifies more than passive inaction...." *Brown v. Continental Cas. Co.,* 209 Kan. 632, 498 P.2d 26 (1972). The trial court erred and attorney fees should have been awarded under § 40–256, Kan.Stat.Ann. (1985).

■ The trial court's error was compounded by its refusal to allow prejudgment interest. Prejudgment interest is authorized by § 16–201, Kan.Stat.Ann. (1985) which states:

**16–201. Legal rate of interest.** Creditors shall be allowed to receive interest at the rate of ten percent per annum, when no other rate of interest is agreed upon, for any money after it becomes due; for money lent or money due on

settlement of account, from the day of liquidating the account and ascertaining the balance; for money received for the use of another and retained without the owner's knowledge of the receipt; for money due and withheld by an unreasonable and vexatious delay of payment or settlement of accounts; for all other money due and to become due for the forbearance of payment whereof an express promise to pay interest has been made; and for money due from corporations and individuals to their daily or monthly employees, from and after the end of each month, unless paid within fifteen days thereafter.

Generally, an unliquidated claim for damages does not draw interest prior to judgment. *Farmers State Bank v. Production Credit Assoc.*, 243 Kan. 87, 755 P.2d 518 (1988). However, the circumstances in this case make it appropriate for prejudgment interest to be awarded as the failure to pay was "unreasonable and vexatious." In *Lightcap v. Mobil Oil Corp.*, 221 Kan. 448, 562 P.2d 1 *cert. denied*, 434 U.S. 876, 98 S.Ct. 228, 54 L.Ed.2d 156 (1977), it was held that where necessary to arrive at full compensation a court may, in its discretion, award interest or its equivalent even where the primary claim is unliquidated. For twelve years the problems plaintiff experienced with leakage went unsolved. Fireman's Fund's actions were unreasonable and were totally inadequate considering the circumstances. It is thus held that the trial court erred in its refusal to award prejudgment interest.

Accordingly, the jury verdict awarding Tonkin $132,000 as regards to Bluejacket and $200,000 as to Plaza West is affirmed. The denial of Tonkin's motions for attorney fees and prejudgment interest is reversed and the matter remanded for the trial court to determine the appropriate amount for attorney fees and prejudgment interest to be entered in Tonkin's favor.

All concur.